# WHEELING.

WOODWINE, et ux. v. WOODRUM, et al.

Submitted January 20, 1881.   Decided December 3, 1881.   · ,

*(PATTON, J., Absent.)

1. If a deed convey real and personal property to a trustee upon trust to sell the property for cash or on credit at any time he thinks proper and to pay over the proceeds to an infant, when he attains the age of twenty-one, whether the property be sold, before or after the infant attains his majority, the purchaser is not bound to see to the application of the purchase-money.

*Cause submitted before Judge P. took his seat.

2. The question, Is a purchaser bound to see to the application of the pur-
chase-money? has reference to the state of things, at the time the deed is
made, and depends ent'rely upon the wording of the deed and not on the
state of facts, which may exist, when the sale is actually made

3. When an interval must or may properly elapse between the sale and the
payment out of the purchase-money, the purchaser is not bound to see to
the application of the purchase-money.

Appeal from and *supersedeas* to two decrees of the circuit
court of the county of Summers rendered respectively on the
20th day of September, 1879, and on the 19th day of April,
1880, in a cause in said court then pending wherein Charles
C. Woodwine and wife were plaintiffs and Richard Woodrum,
Houston L. Baber and Giles T. Lowry were defendants, al-
lowed upon the petition of said Baber and Lowry.

Hon. Homer A. Holt, judge of the eighth judicial circuit
rendered the decrees appealed from.

GREEN, JUDGE, furnishes the following statement of the
case :

On February 5, 1867, John Woodrum and wife in consid-
eration of natural love and affection and the nominal consid-
eration of one dollar conveyed to their son Richard Woodrum,
trustee, two bonds, described in the deed, two mules and
one hundred and eighty acres of land in Summers county des-
cribed in the deed, in trust for the equal benefit of the six chil-
dren, naming them, of Hugh Woodrum, another son of the
grantor's, provided that $100.00 of these effects are to be paid
to Jordan Woodrum, one of the parties.   The deed then pro-
vides: "The trustee is empowered to sell the land hereby
conveyed either for cash or on credit, whenever the full value
can be obtained therefor, and to pay over the portion due
each beneficiary, whenever he arrives at the age of twenty-one
years.   The said trustee may also sell the other property,
whenever in his discretion such sales are proper and necessa-
ry, and after paying said one hundred dollars to said Jordan
Woodrum he will pay the beneficiaries as is provided in case
of the land."   This deed was promptly and duly acknowl-
edged but not recorded till February 20th, 1872.

In March 1874, Charles C. Woodwine and wife, he having
married one of these six children of Hugh Woodrum one of

the beneficiaries in this deed, brought a chancery suit in the circuit court of Summers county against the trustee, Richard Woodrum, for a settlement of his accounts as such trustee, the other beneficiaries being made defendants.   The bill states, that the plaintiff, Charles C. Woodwine, had bought out in full the interest of one of his brothers-in-law and also the interest of one of his sisters-in-law.   It also states, that the trustee had sold all the real and personal property named in the deed and collected the two bonds and with the exception of small sums named in the bill had failed to pay over the proceeds to the beneficiaries in the deed, all of whom were then of age except one.   The settlement asked was made in this suit; and on April 15th, 1876, the court decreed to be paid by the trustee, Richard Woodrum, as due from him to several of the beneficiaries, several sums amounting to $755.78½ with interest from July 1st, 1874, leaving the balance due to one of them undetermined and to be thereafter ascertained.   Nothing was found due Jordan Woodrum, the $100.00 to be first paid to him under the deed having been paid him in full.

In December, 1876, an amended bill was filed in this suit, which set out these additional facts, which were either admitted to be true or proven in the further progress of the cause : that after the deed was made to Richard Woodrum, trustee, dated Feb. 5, 1867, but at what time does not appear, he sold the land conveyed to him by this deed as trustee to Giles T. Lowry, one of the appellants, for the sum of $1,000.00, which was paid to the trustee in full, before this amended bill was filed, but at what time does not appear, except that $130.00 was paid Oct. 1, 1870; $414.77 July 7, 1871, and $186.23 Dec. 16, 1872 ; that before Richard Woodrum had made a deed to the said Giles T. Lowry, he sold the land to H. L. Baber, the other appellant, at an advance of $250.00; and Lowry then directed Richard Woodrum to make the deed for the land directly to H. L. Baber, which he did on Feb. 5, 1872 ; that this deed was recorded Oct. 1, 1872 ; that when the deed was made to Richard Woodrum, trustee, on Feb. 5, 1867, four of the six children of Hugh Woodrum, the beneficiaries in the deed, were under twenty-one years of age, and the youngest of these was only eight years and nine months old.   The plaintiff proved by one of the beneficiaries in this deed, that

C. C. Woodwine told the appellant, H. L. Baber, in the presence of one Dunn, that he had better mind how he paid out his cash, that the title of this land was in Hugh Woodrum's heirs and not in Richard Woodrum. The time when this occurred is not stated; but it is said he, Baber, had then paid $200.00 or $300.00 on the land. The conversation and notice is denied by the depositions of both Baber and Dunn; nor is it material, whether it be so or not, as it only proves, that the purchaser Baber had notice of the character, in which Richard Woodrum held the title to this land, that is, as trustee for Hugh Woodrum's children, and he must independent of this notice be conclusively presumed to have known the character of the title, under which he claimed this land as purchaser. The amended bill sought to make this land liable for what the trustee, Richard Woodrum, owed, he being then insolvent.

The answers of the appellants, Baber and Lowry, claim, that they were not bound to see to the application of the purchase-money by the trustee, Richard Woodrum. But by its decree of September 20, 1879, the circuit court decided, that they were bound to see to the application of the purchase-money, that the land was bound for whatever the trustee, Richard Woodrum, might owe to the *cestuis que trust,* and ordered, that a commissioner ascertain the amount. This was done and on April 19, 1880, the court decreed, that the amount due from Richard Woodrum, trustee, was $963.95 with interest from March 5, 1880, and ordered, that unless the sum was paid to the parties entitled to it within ninety days, said land of H. L. Baber's should be sold by a special commissioner in the manner prescribed

From these decrees of September 20, 1879 and April 19, 1880, the defendants, Lowry and Baber have obtained an appeal and *supersedeas* to this Court.

*N. M. Lowry* and *A. C. Snyder* cited the following authorities: 1 Lom. Dig. s. p. 245; 16 Ves. 151; 1 Lead. Cas. Eq. s. p. 58; 9 Leigh 387; Story on Ag. § 58; 4 Madd. 142; 2 Sto. Eq. Juris. §§ 1133, 1134; 6 Ohio 114; 1 Call 524; 14 B. Mon. 433; 8 Ga. 258; 34 Ga. 443; 28 Ill. 319; 10 Johns. 185; 6 Rand. 618.

*Alexander Mahood* for appellees cited the following authori-

ties: 1 Lom. Dig. 215, 241, 242; 16 Ves. 249; 4 Bouv. Inst. p. 249, § 3966; 4 Gratt. 482; 2 Sto. Eq. Juris. §§ 1127, 1133; Hill Trustees 342, 363; Adams. Eq. 330, (s. p. 156); 2 Tuck. Blacks. 436, 437, 446, 447, 449, 450; 4 U. S. Dig. 687; 27 Ark. 122; 2 U. S. Dig. 698; 31 Ia. 53; 1 Sto. Eq. Juris. §§ 399, 400; 1 Lom. Dig. s. p. 294; *Id.* s. p. 215; Adams. Eq. s. p. 158.

GREEN, JUDGE, announced the opinion of the Court:

The only question in this case is: Were the appellants, H. L. Baber aad G. L. Lowry, bound to see to the application of the purchase-money of the one hundred and eighty acres of land bought of Richard Woodrum, trustee, to the payment of the amounts due under the deed of February. 5, 1867, to the children of Hugh Woodrum, as they respectively attained the age of twenty-one years? The circuit court decided, that they were so bound, and that this land in the hands of the appellant, Baber, was liable to the payment of the several sums due to these children. By this deed their grandfather and grandmother conveyed this land and certain personal property to their uncle, Richard Woodrum, upon trust to sell the property both real and personal for cash or on credit, whenever he could obtain a fair price therefor, and after paying $100.00 to a son of the grantor to pay the residue equally to these six children of Hugh Woodrum, when these children respectively attained the age of twenty-one years. The youngest of these children, when this deed was made, was under nine years of age. The trustee paid the $100.00 to the son of the grantors and sold the land to G. L. Lowry, and Lowry sold it to H. L. Baber. These sales were on credits. It does not appear when they were made; but as the deed was made by the trustee, Richard Woodrum, to H. L. Baber by the directions of G. L. Lowry on February 5, 1872, the sales were of course before that time.

The first payment on the land was made October 1st, 1870, by the purchaser, Lowry, and probably this was about the date of the sale made by the trustee, Richard Woodrum. The last payment, of the date of which there is proof, was made December 16, 1872; and afterwards more than $200.00 must have been paid, but when it does not appear, except

that it was before March, 1874, when this suit was instituted. When the first payment on this land was made two of the beneficiaries, children of Hugh Woodrum, were of age, and when the last payment was made, probably three of them were of age; and though these children were paid something by the trustee, they were not paid the amount due to them respectively.

Were the appellants, Lowry and Baber, bound to see that the trustee, Richard Woodrum, paid the amount due these children of Hugh Woodrum; and is this land in the possession of Baber as purchaser bound for the amount due to these *cestuis que trust*, the children of Hugh Woodrum, who are now all of age? The court below decided that this land was so bound.

It is obvious, that if a deed of trust authorizes the trustee to sell the property and to receive the purchase-money and give a receipt to the purchaser in discharge of his obligation, neither the purchaser nor the property could be held responsible for a subsequent breach of trust on the part of the trustee in failing to pay over the purchase-money as required by the deed of trust to the *cestuis que trust*. It is equally obvious, that if the deed of trust did not authorize the trustee to receive the purchase-money or give a discharge to the purchaser, but required him, the purchaser, to see, that the *cestuis que trust* were paid, before he could get a receipt discharging him from the payment of the purchase-money, and he paid the purchase-money to the trustee, who failed to pay it to the *cestuis que trust*, the purchaser or the property in his hands would be bound to pay to the *cestuis que trust* the purchase-money. It is also obvious, that it is immaterial, whether the deed of trust expressly authorizes the trustee to sell the property and to receive the purchase-money and to give a receipt to the purchaser in discharge of his obligation for the payment of the purchase-money, or whether this authority is fairly implied from the nature of the trust imposed by the deed on the trustee. In either case it is obvious, that the payment of the purchase-money to the trustee must be a full discharge of the purchaser from all liability; and the property, he has purchased, cannot be held liable for a subsequent breach of trust by the trustee.

The only difficulty is to determine what must be the character of trust in order to justify the legal inference, that the trustee impliedly has authority to receive the purchase-money and give a receipt to the purchaser in full discharge thereof. The difficulty has been in determining what was the character of the trust, which would justify the court in drawing the inference, that the trustee had such authority.

It has been held from an early day, as far back as 1740, that such an implication would not arise, when the trust was simply to pay certain specified debts at once. See *Elliott* v. *Merryman*, Barn. C. 78 ; White & Tudor Lead. Cas. Eq. side p. 59 ; *McLeod* v. *Drummond*, 17 Ves. 162 ; *Colyer* v. *Finch*, 5 H. L. Cas. 923 ; *Dunch* v. *Kent*, 1 Vern. 261 ; *Lloyd* v. *Baldwin*, 1 Ves. Sr. 173 ; *Smith* v. *Guyon*, 1 Bro. C. Cas. 186 ; *Johnson* v. *Kennett*, 6 Sim. 384 ; *Duffy* v. *Calvert*, 6 Gill 487 ; *Downman* v. *Rust*, 6 Rand. 587 ; *Clyde* v. *Simpson*, 4 Ohio (N. S.) 445. It is true, that several eminent judges have been of opinion, that a power to sell necessarily includes the incidental power to give a valid discharge for the purchase-money, and this view has received countenance in this country. But the decisions are numerous, that where the trust is exclusively for the payment of legacies, scheduled debts or other definite and ascertained objects, and the payment is to be made immediately on the making of the sale and the receipt of the purchase-money, it is the duty of the purchaser to see to the application of the purchase-money, unless the intention of the donor clearly appears on the face of the deed or will to exonerate him and throw the whole responsibility on the trustee. Another rule however has been adopted in England by statute, 22 and 23 Vict. c. 35 ; but this rule, that the purchaser is bound to see to the application of the purchase-money, was never applied, when the trusts were of an indefinite character, as to pay debts generally or to pay a definite sum or legacy after the payment of debts generally. See *Elliott* v. *Merryman* ; White & Tudor's Lead. Cas. in Eq. 59 ; *Walker* v. *Smallwood*, Amb. 676 ; *Jenkins* v. *Hiles*, 6 Ves. 644 and note ; *Bailey* v. *Ekins*, 7 Ves. 323 ; *Gardner* v. *Gardner et al.*, 3 Mason 178–218 ; *Hauser* v. *Shore*, 5 Ired. Eq. 357 ; *Goodrich* v. *Procter*, 1 Gray 567 ; *Davis* v. *Christian*, 15 Gratt. 11–40 ; *Grant* v. *Hook*, 13 Serg. & R. 259–262 ; *Andrews* v.

*Sparhawk*, 13 Pick. 393; *Sims* v. *Lively*, 14 B. Mon. 435. Nor is the purchaser bound to see . to the application of the purchase-money, where the deed or will shows, that the trustee is authorized to sell at a time, that the distribution could not possibly be made, as when the persons, to whom the proceeds are to be paid, at the time the sale is authorized to be made, could not be ascertained, as shown by the face of the deed, (see *Balfour* v. *Welland*, 16 Ves. 151) or when the purchase-money, as in the case now before us, is to be paid to children, who are infants at the time, that the sale is authorized to be made by the trustee. See *Sowarsby* v. *Lacy*, 4 Madd. 79 and also *Lavender* v. *Stanton*, 6 Madd. 36 ; *Breedon* v. *Breedon*, 1 Russ. & Myl. 413; *Keon* v. *Magawly*, 1 D. & W. 401.

So in this country it has been held, that where the trustee is authorized to sell land, whenever he thinks proper, and pay the proceeds to an infant, when he attains his majority, the purchaser is not bound to see to the application of the purchase-money. See *Coonrod* v. *Coonrod*, 6 Hammond.(Ohio) 116. So also where the interest on the proceeds of the sale was to be paid by the trustee to A. for life and at her death to her children, the purchaser is not bound to see to the application of the purchase-money. See *Hauser* v. *Shore, et al.*, 5 Ired. Eq. 357. The obvious reason which underlies these decisions, is, that as the grantor or testator authorized an immediate sale by the trustee and directed the proceeds of the sale to be paid to persons, some of whom were infants, and therefore incapable of signing receipts, it must have been intended, that the trustee might sign receipts discharging the purchaser from all liability, as such authority on his part was necessary for the execution of the trust expressly declared, the immediate sale of the property,

It may be regarded as a well settled rule, that whenever an interval must or may properly elapse between the sale and the application of the purchase-money by the trustee, the purchaser will be freed from all liability by a payment to the trustee and will not be responsible for a subsequent misappropriation by the trustee. See *Wormley* v. *Wormley*, 8 Wheat. 422; *Sims* v. *Lively*, 14 B. Mon. 433, 449. Of course if, when a sale of land is made by a trustee, there is a charge already on it in favor of an infant, the sale by the trustee would still

leave the land in his hands liable to the charge. This was the case in *Dickinson* v. *Dickinson*, 3 Bro. C. C. 19.

There is no difficulty in applying these principles to the case before us. The conveyance to the trustee was of real as well as of perishable personal property, two mules. The deed expressly authorized the trustee to sell at his discretion (and of course immediately) for cash or on credit, and pay the proceeds of sale to six persons, none of whom were of age, and one and the youngest of whom would not be of age for more than eleven years. Is it not obvious, that the grantors intended this trustee, who was thus authorized to sell at once for cash, to receive the purchase-money and give a receipt to the purchaser in discharge of his liability? If the money was to be paid in cash, how could the purchaser see to its application, when most of it could only be applied at a far distant period? It seems to me obvious, that the grantors in this deed intended, that the trustee should receive the purchase-money, for which the property was sold by him, and give receipts to the purchaser in full discharge of the purchase-money, as if it had been so expressed in the deed. The authorities I have cited justify me in saying, that this authority on the part of the trustee is plainly to be inferred.

It is said however in the argument of the appellees counsel, that this sale was not made till after some of the *cestuis que trust* were of age; and that half the purchase-money when paid to the trustee could without any inconvenience have been paid to the adult *cestuis que trust*; and that therefore the purchaser was bound to see to the application of at least that much of the purchase-money. It is true, he could with convenience to himself have seen, that this half of the purchase-money was properly applied by the trustee; but unless he had reason to believe, that the trustee intended to misapply this portion of the purchase-money, he was under no sort of obligation to see to its application, because the trustee was the trusted agent of the grantors in the deed and was authorized by it to receive the whole of the purchase-money and give receipts for it in full discharge of the purchaser, as we have seen. "The deed must receive its construction as from the moment of its execution, according to the frame of the deed, the purchasers were or were not liable to see to the application of the purchase-

money; and their liability cannot depend upon any subsequent event. It is not material, that the objects of the trust had become capable of receiving the purchase-money." So said Sir Wm. Grant in *Balfour* v. *Welland,* 16 Ves. 151. In accordance with this view in *Johnson* v. *Kennett,* 3 Myl. & K 624 (10 Eng. Chy. Rep. 332,) Lord Lyndhurst said: "But it is said, that the debts having been paid and paid out of the personal estate, and nothing remaining but the legacies, the case falls within the general rule applicable to cases, where legacies are charged upon real estate. I find no authority for such proposition. *The rule applies to the state of things at the death of the testator;* and if the debts are afterwards paid, and the legacies alone are left a charge, that circumstance does not vary the general rule." It is true the decision he rendered in that case does not go to this extent, the case not requiring that it should. It was only decided, "that where an estate is charged generally with the payment of debts and legacies and the debts have been paid, but not the legacies, the purchaser will not be bound to see to the application of the purchase-money, unless it be proved, that he knew of the payment of the debts. But in *Eland* v. *Eland,* 4 Myl. & Craig 429 (18 Eng. Chy. R. 427, 428), Lord Cottenham concurred in these views of Lord Lyndhurst as above expressed. It was so held too in *Forbes* v. *Peacock,* 4 Phillips (19 Eng. Chy.) 720. See also *Paige* v. *Adam,* 4 Beav. 469 in accord with these views; but this decision was disapproved in *Forbes* v. *Peacock,* 12 Sim. 528 by the Vice-Chancellor, but on appeal in 4 Phillips this decision of the Vice-Chancellor was reversed. Lord St. Leonard however in *Stonghill* v. *Austin,* 1 DeG. Mac. & G. 635, 654 reviewed these cases and others; and he concludes: "In that way all the cases are reconcilable, and all stand upon one footing, viz., that if a trust be created for the payment of debts and legacies, the purchaser shall in *no case* be bound to see to the application of the purchase-money. This is a consistent rule authorized by the words of the testator; and it is one, to which I shall adhere, so long as I sit in this Court." See p. 650.

With these views I fully concur; and it is therefore entirely immaterial, whether in this case the sale and payment of the money by the purchaser were made before any of the *cestuis*

*que trust* were of age, or after they were all of age, as in either case the purchaser was under no obligation to see to the payment of the purchase-money, for the deed had authorized the trustee to receive the purchase-money and give the purchaser a full discharge for the payment.   Of course if the purchaser was aware, that in making the sale the trustee was making it not to carry out but to violate his duty as trustee, the purchaser would by his concurrence in the breach of trust by the trustee be regarded himself as a trustee, and the property in his hands would be liable to the *cestuis que trust.*   This is shown by several authorities I have cited; and many more might be cited to the same effect.   But as laid down in *Davis* v. *Christian et al.,* 15 Gratt. 12.   "To convict a purchaser of a fraudulent participation in a breach of trust, the evidence of notice of the fraudulent intent must be very strong.   The purchaser has a right to presume in the absence of direct or plain proof to the contrary, that the trustee is exercising his power fairly and faithfully in conformity to his duty."

In this case there is a total absence of any proof, that the purchaser was fraudulently participating with the trustee in a breach of trust.   The purchasers are of course presumed to have known, that Richard Woodrum in making the sale was acting as trustee.   This the authorities cited by the appellees' counsel show, if it needed any authority to establish so clear a proposition.   This and the fact, that a person purchasing from a trustee, who in selling is violating his duty, becomes himself a trustee chargeable with the execution of the trust, is all that the authorities referred to by the appellees' counsel prove.   But this law has no application to this case, as we have seen the trustee in selling this property and in receiving the purchase-money was in the strict performance of his duties; and there is no evidence, that he in making this sale and receiving the purchase-money did so with any purpose of misapplying the proceeds.   All that is shown is, that they were not properly applied, and some years afterwards he was insolvent.   Much less is there any kind of proof, that the purchasers were fraudulently participating with him in a breach of trust.   So far as the record shows, they paid their purchase-money to the trustee in perfect good faith.   The circuit court therefore improperly held them bound to see to

the application of the purchase-money and the land in the hands of the last purchaser bound to the *cestuis que trust* for the amount due them.

The decrees of the circuit court of September 20, 1879, and April 19, 1880, must be reversed and annulled ; and the appellants must recover of the appellees their costs in this Court expended ; and this Court proceeding to render such decree, as the circuit court should have rendered, must dismiss the amended bill ffled at December rules, 1876, and the defendants therein, Giles T. Lowry and H. L. Baber, must recover of the plaintiffs their then costs expended ; and this cause must be remanded to the circuit court to proceed further therein on the original bill, if further proceedings therein are necessary.

JUDGES JOHNSON AND HAYMOND CONCURRED.

DECREE REVERSED. CAUSE REMANDED.