# CHARLESTON.

AMMONS, *Guardian, et al. v.* AMMONS *et al.*

Submitted September 6, 1901.   Decided December 7, 1901.

1.  PETITION IN CHANCERY—*Sale of Infants Property.*

A purchaser of real estate devised to infants in remainder, and sold under decrees in a summary proceeding, brought under chapter 83 of the Code, who, before paying all the purchase money, discovers that the decree of sale and proceedings are, in material respects, not in conformity with the statute, and, therefore, so erroneous as to becloud and endanger his title, may file his petition in said proceeding for the purpose of having such error corrected and his title cleared, and have relief thereon as far as it is in the power of the court to give it. (p. 400).

2.  BILL—*Sale of Infant's Property—Purchaser.*

When, in such case, the infant remainder-men, by their guardian, bring a suit in chancery to compel the purchaser to pay the balance of purchase money due, exhibiting with the bill all the decrees and orders made and papers filed in the summary proceeding, and the purchaser answers the bill, averring as new matter constituting a claim for affirmative relief, the error and irregularity in the decrees, and prays a correction of the same,

and confirmation of the sale, and also files a cross-bill for the same purpose, the original bill should be treated and regarded as a rule, in the summary proceeding, to show cause why the purchaser should not be proceeded against for the failure to pay the purchase money, and the answer and cross-bill of the purchaser as his petition in the summary proceeding for correction of the error and perfecting of his title.  (p. 410).

3.  ESTATE IN REMAINDER—*Infants—Sale.*

When the real estate so sold is an estate in remainder, created by a devise to the daughter of the testator for her natural life, remainder in fee to her heirs, and the sale is made upon the application of the guardian of her children, her children, born after such sale, are deemed to have been before the court by representation, and can claim no interest except in the fund arising from the sale, and in it they are entitled to share equally with the others.  (p. 411).

4.  QUAERE—*Persons in esse—Fund.*

*Quaere,* whether said principle of representation is qualified to the extent that a decree of sale, which fails to provide for, and protect, the interest of persons not *in esse* and so deemed to be before the court, by substituting the fund derived from the sale of the land in place of it, and preserving the fund to the extent necessary to satisfy such interests, is ineffectual to pass their title to the purchaser?  (p. 411).

Appeal from Circuit Court, Monongalia County.

Bill by Milton A. Ammons and others against Howard L. Ammons and others.  Decree for plaintiffs, and the South Penn Oil Company appeals.

*Reversed.*

A. B. & R. F. FLEMING and U. N. ARNETT, JR., for appellant.

Cox & BAKER, for appellees.

POFFENBARGER, JUDGE:

This controversy relates to the oil and gas in a tract of two hundred acres of land, situated in Monongalia County, formerly owned by Daniel Conaway, who died testate several years ago. By his will he devised said tract as follows: "To my daughter, Armina Ammons, to have and to hold during the residue of the term of her natural life, but at her death to go to her heirs, I give and devise the residue of my home farm, being about two hundred acres, subject to an estate for life therein, which I

hereby give and devise to my beloved wife, Malinda Canaway."
The devisee, Armina Ammons, is the wife of Milton A. Ammons. The will was probated August 29, 1887. On the 17th
day of February, 1892, Milton A. Ammons having been appointed guardian for Howard L. Ammons, Clarence L. Ammons, Ashley N. Ammons, Cyrus C. Ammons, Stella M. Ammons, Milliard R. Ammons, Early T. Ammons and Earnest W.
Ammons, all of whom were infants and being the only children,
at that time, of said Armina Ammons, filed his petition in the
circuit court of said county, under section 12 and following
sections of chapter 83 of the Code, alleging that a lease had
been executed by the said Milton A. Ammons and Armina Ammons to C. J. Ford, granting to said Ford the right to drill and
operate for oil, gas and water on the tract of land, containing
about three hundred acres, of which fifty acres was owned by
Milton A. Ammons individually, and the residue was the tract
of land devised as aforesaid which, by actual measurement, was
found to contain two hundred and forty-three acres; that said
lease had been assigned to the South Penn Oil Co.; that Melinda
Conaway had conveyed her life estate in the land to Milton A.
Ammons and Armina Ammons, in consideration of natural love
and affection and their agreement to support, care for, maintain and clothe her; that, by the terms of said lease, the lessees
were to deliver to the leasors, in the pipe lines with which the
wells should be connected, one-eighth of all the oil produced and
saved and to pay three hundred dollars annually for every well
from which gas should be transported and used off the premises;
that, until the estate in remainder in the oil and gas in said land
should be disposed of, no development of oil and gas under the
lease could be had; that all the land adjoining said tract so devised had been leased for oil and gas; that said infants had no
means to develop the other land; that they had no other estate,
real or personal; that it would be greatly to their advantage and
interest to have the said estate in remainder in the oil and gas
sold; and prayed that sale might be made. A guardian *ad litem*
was appointed for the infants and filed his answer, committing
their interest to the protection of the court. Melinda Conaway
filed her answer and consented to a sale of the interest of the
infant children and releasing her lien for support to that extent. Milton A. Ammons and Armina Ammons filed their joint
and separate answer, setting up their joint ownership of the

interest of Melinda Conaway, under the provisions of the will by reason of her conveyance to them, and the life estate of Armina Ammons as provided by the will, and consented that the said infant might have an estate in *presenti* of an undivided one-third of said oil and gas, if the court should think the same proper, and that the other two-thirds might be divided equally between Melinda Conaway, on the one side, and themselves on the other side.  Upon this petition, these answers, the exhibits therewith filed and the testimony of the witnesses taken at the hearing, the court decreed a sale of the interest of said infants in the undivided seven-eighths of the oil and gas in said two hundred and forty-three acres of land upon the following conditions to be performed by the purchaser: "To begin to operate, mine and bore for the oil and gas within and under said tract of land, free of cost to said infants or their guardian, within sixty days after the confirmation of the sale hereunder, and complete one well within one year after said confirmation, unavoidable accidents and delays excepted, and if oil be found thereon in paying quantities, then after said first well is completed thereon, the said purchaser shall immediately commence and drill other wells thereon as shall seem necessary and proper to protect the oil and gas in and under the said tract of land; and shall also deliver as royalty to said infants or their guardian, free of costs to them or their guardian, the one-half of the one-eighth of all oil produced and saved from the said land, in pipe lines or tanks, and pay to said infants or their guardian the one-half of three hundred dollars per year for the gas from each and every well drilled thereon, producing gas, the product from which is marketed or used off the said premises; and also to pay all damages to growing crops by reason of operations."

Under this decree, sale was made and the South Penn Oil Co. became the purchaser for the sum of three hundred dollars and the costs of the proceedings.  The purchase-money was paid and a deed was executed to the purchaser, conforming in all respects to the terms of the decree of sale.  Thereafter the South Penn Oil Co. entered upon the land, drilled sixteen or sventeen wells, some of which were dry, others productive, but not in paying quantities, and still others which proved to be very valuable, and in pursuance of the terms of the decree and its deed, it delivered one-half of the royalty oil, that is one-half of the one-eighth of all the oil produced, into the pipe lines to the credit of Mil-

ton A. Ammons, guardian for said infants, and the other half to
the credit of Armina Ammons, until some time in the year 1897,
when the oil company refused to make any further deliveries,
and notified the Eureka Pipe Line Co., into whose lines and
tanks the oil went, to make no more deliveries on account of said
royalties. The oil delivered to Armina Ammons amounted to
fourteen thousand four hundred and two and thirty-six one-
hundredths barrels which netted her thirteen thousand nine hun-
dred and forty-seven dollars and nineteen cents and the same
amount of the same value was delivered to Milton A. Ammons,
guardian as aforesaid.

This cessation on the part of the oil company to make further
deliveries of royalty oil is due to the fact that this Court on
November 17, 1897, decided in the case of *Wilson* v. *Youst,*
reported in 43 W. Va. 826, that "The petroleum oil lying under
a tract of land which has been .devised to a life tenant who is
in possession, and which is to go to certain infant children after
the decease of the life tenant, may be sold, upon the petition of
the guardian of said infants, under the provisions of chapter 82
of the Code, or leased; and the life tenant will be entitled to the
interest of the royalty during the continuance of the life estate,
and then the residue or *corpus* of the royalty will be paid to the
remainder-men." In view of this it was apparent to the oil com-
pany that the terms of sale and conditions, prescribed by the
court in its decree of sale, requiring the payment of one-half
of the royalty to the life tenant, was not in accordance with
the principles announced in said case of *Wilson* v. *Youst.* The
company feared that after the infants should obtain their ma-
jority, they might set up the illegality of these deliveries to the
life tenant and harass the company with numerous suits on
account thereof. Another source of possible danger is the un-
certainty as to who will be finally entitled to the *corpus* of said
fund. The life tenant may survive some or even all of her chil-
dren.

In the mean time, a further complication arose in the fact
that three other children were born to Milton A. Ammons and
Armina Ammons, Allie C., Carlie R., and Willie V. Ammons.
They were born after the sale made in the summary proceeding,
and it is contended in this suit that the South Penn Oil Co.,
by said purchase, did not obtain their interest in remainder in
the oil and gas in said tract of land. The existence of these three

children, it is said, was discovered by the South Penn Oil Co. in the progress of a suit in chancery, brought in August, 1895, by Howard L. Ammons and the seven older children, by Milton A. Ammons as their next friend, against the South Penn Oil Co. and Charles Powell, special commissioner, for the purpose of requiring said company to drill and operate the land according to the terms and conditions of the will, in which a decree was entered in February, 1893, requiring the company to drill certain additional wells on certain parts of the land or forfeit their right to drill on those portions of said land, from which decree an appeal was taken by the company, and resulted in a reversal of the decree by this Court on the 31st day of March, 1900.

Pending the giving of a bond by the guardian the three hundred dollars paid as purchase-money by the South Penn Oil Co. went into the hands of the general receiver of the court, who, some time thereafter, died leaving his accounts in bad shape, and the money was never paid by the guardian. At the time this suit was brought, Howard L. Ammons was about twenty-two years old. The guardian alleges that he had made a final settlement in which it was ascertained that, on the 24th day of October, 1896, there was a balance due from him to Howard L. Ammons of three hundred and twenty-five dollars and seventy-nine cents, all of which and more he had paid, but that his said ward had refused to receipt to him for the money and also to accept said settlement as final. Three other wards and said Howard L. Ammons seem to have gotten beyond the control of their parent and guardian and their reckless dispositions, added to the complication hereinbefore mentioned, and the advanced age of the guardian and some uneasiness on the part of his sureties, induced him to bring this suit, as guardian of Clarence L., Ashley A., Cyrus C., Stella M., Milliard R., Early F., Earnest H., Ollie C., Carlie R. and Willie V. Ammons and late guardian of Howard L. Ammons and in his own right, against the South Penn Oil Co. and Eureka Pipe Line Co., all of the children of himself and his wife, Armina Ammons, E. H. Coomes, general receiver of the circuit court, and all the sureties on his bond as guardian. The bill sets out all the facts hereinbefore stated more fully and in detail than they are here given and with it are exhibited all the papers and decrees, relating to said summary proceeding in which the sale was made, and references are therein made to said suit brought by Howard L. Ammons

and others against the South Penn Oil Co. and others in August, 1895. The prayer of the bill is that all matters in difference between said guardian and his wards be adjudicated and settled; that all questions of doubt and uncertainty as to how the accounts between him and his wards should be settled be adjudicated and determined; that the question as to how the proceeds of said oil should be divided among said infants be settled; that the proper person be designated to receive the money in the hands of the general receiver when collected; that a proper person be designated to receive and sell the share of said infants in the oil produced from said tract of land hereafter as well as the oil remaining unsold in the hands of the Eureka Pipe Line Co.; that all the royalty oil in the hands of said company or of the South Penn Oil Co. be disposed of; that the plaintiff be relieved and discharged as guardian and permitted to pay over to the general receiver, or to such other person as the court should designate, all of the estate and money in his hands belonging to said defendants or any of them; that his settlement as guardian of Howard L. Ammons be confirmed and all matters in difference between them be settled and adjudicated; that all necessary orders be made for the protection of the estate of said infants; that his sureties be relieved from further liability; and that he might have such other relief, both general and special, as the court might deem proper. To this bill an answer by the guardian *ad litem* for the infants was filed. The South Penn Oil Co. filed its answer reciting all the proceedings under which it made its purchase aforesaid, averring its delivery of the royalty oil until the —— day of ——, 1897, as authorized by the decree and deed under which it operated, disclaiming any knowledge as to what Armina Ammons did with the money so received by her or what the plaintiff, as guardian, did with the proceeds of the oil delivered to him for said infants as remainder-men, and insisting that he owes no duty in the premises and was not charged with any duty as to the use, investment or application of the fund so decreed to said infants as remainder-men, and is protected in the delivery of said royalty oil, both to Armina Ammons and the said infants, by the decrees and deed under which it entered upon and developed said land. It also avers that the plaintiff did not communicate to it any knowledge of the birth of said three younger children and that it learned of their existence from another source. It sets forth, as the reason for

ceasing to make further delivery of the royalty oil, said decision in the case of *Wilson* v. *Youst,* holding that a life tenant is only entitled to the interest upon the money derived from the sale of the royalty oil and that remainder-men are not entitled to the *corpus* of such fund, until after the death of the life tenant, and that such oil should be sold and the proceeds invested for the benefit of the life tenant and those entitled in remainder and only the interest thereon paid to the life tenant. It denies that under the law as thus settled said Armina Ammons or the plaintiff as guardian is entitled to demand any of the royalty oil, then remaining in the hands of the respondent, or that might be obtained thereafter from said land, or any gas rentals that might result from finding gas on said land, but that the same should be sold and the proceeds invested and the interest thereon paid to said Armina Ammons, except that, if it should be ascertained that she had received money from the sales of royalty oil which she should not have had or a greater sum than that to which she was entitled, and that, if the plaintiff had received money which he should not have received, or a greater sum than he should have received, the court should take charge of the interest to which Armina Ammons might be entitled in the future and hold a sufficient portion thereof to reimburse the remainder-men, and should require the guardian to pay the funds in his hands, so received from the proceeds of the sale of royalty oil, to the receiver of the court, to be held and paid to those entitled in remainder at the death of Armina Ammons. It avers that the decrees in said summary proceeding failed to provide for the proper disposition of the royalty and gas rentals, as the law now requires, and that the respondent cannot safely deliver the royalty oil, now in its possession, or which it has delivered to the Eureka Pipe Line Co. or which may hereafter come into its possession or any gas rental, should any become due, without the direction of the court. It avers that the oil produced since the —— day of ——, 1897, has been delivered to the Eureka Pipe Line Co. to be held by it for whoever may be entitled thereto, which company, being a common carrier and storer of oil, is entitled to its charges for storage and transportation. It denies that the plaintiff and Armina Ammons are entitled to the money in the hands of the general receiver, also that additional wells should have been drilled on said land, also that the same had not been properly drilled and developed, also

that it is liable to the said Armina Ammons and the plaintiff or
his wards for failure to properly develop said land.

By way of affirmative relief, the respondent prays that its in-
vestment and interest in the oil and gas be protected; that its
title thereto be sustained and adjudged valid; that such pro-
ceedings may be had and decrees made as will protect it in the
delivery of the oil now in its possession or in the custody of the
Eureka Pipe Line Co., and in all respects in reference to the
royalty theretofore delivered to the plaintiff and Armina Am-
mons; that the decrees in the summary proceedings may be so
corrected that, in future, the royalty oil on hand, and to be
taken from said land, may be sold and the proceeds invested for
the use of the life tenant and remainder-men in accordance with
the law. That the plaintiff as guardian and the defendant,
Armina Ammons, be required to account to said three after-
born children for the oil or the proceeds of the sale of the oil
delivered to, and sold, by them, so far as said children may be
interested therein; and that such other relief may be given as is
necessary to protect the respondent from loss by reason of what
has been done. The plaintiff excepted to this answer, but, with-
out passing upon it, and postponing the consideration thereof,
as well as of the demurrer to so much of the answer as prays
affirmative relief, the court made and entered a decree, referring
the cause to a commissioner, to report upon certain matters des-
ignated therein. Afterwards the South Penn Oil Co. filed, in
the clerk's office at rules, its cross bill of complaint in the cause
in which it set out more fully and particularly all the facts and
proceedings hereinbefore mentioned and concluded with a prayer
substantially the same prayer as that contained in its answer.
Process was sued out upon this cross bill and the service
thereof was had upon all the adult defendants and as to them the
cross bill was taken for confessed. For the infant defendants
a guardian *ad litem* was appointed at rules and filed his an-
swer. Afterwards Milton A. Ammons, in his own right and as
guardian, and Armina Ammons filed their separate answer to
said cross bill and their general replication to the answer of the
South Penn Oil Co. On the first day of March, 1900, a decree
was entered, confirming the commissioner's report so far as it
relates to the accounts of the guardian, directing that he pay over
all the money in his hands to E. H. Coomes, the general receiver
of the court, except a small amount which he was directed to

pay to one of his wards who had attained his majority. Consideration of the answer and cross bill of the South Penn Oil Co. and the exceptions and demurrers was postponed, as was also consideration of the exceptions of the South Penn Oil Co. to the report of the commissioner. On the 25th day of February, 1901, another decree was made and entered in which so much of the South Penn Oil Co.'s answer, as sought affirmative relief, and its cross bill were dismissed, and general replication was filed to the remaining portions of the answer, and it was also adjudged, ordered and decreed that Armina Ammons is entitled to one-half of the royalty oil and that the other half be divided among all of the eleven children. Under the former decree, the oil in the hands of the Eureka Pipe Line Co. had been taken into the possession of the general receiver and sold. Of the proceeds he was required to pay Armina Ammons one-half of the royalty oil and sell the future deliveries of oil from time to time and loan out the proceeds. The South Penn Oil Co. was required, by the decree, to deliver only one-half of the future royalty oil into the pipe line to the credit of Armina Ammons. In respect to this last decree, said company has obtained an appeal and *supersedeas*.

In many respects this case is like that of *Wilson* v. *Youst*. In that, as in this, the land had been devised to one person for life subject to the life estate of another person and remainder in fee to others who were infants. In the summary proceeding under chapter 83 of the Code, the estate in remainder of the infants was sold and the royalty decreed to be paid and divided. Afterwards some infant remainder-men brought a suit in chancery by their next friend to correct the decrees made in the summary proceeding, and stop the payment of the *corpus* of the royalty of the life tenants and confine them to the interest upon the proceeds of the royalty oil. The bill having been dismissed by the court below, the decision of that court, upon appeal, was reversed and the cause remanded, this Court holding, as already shown, that the life tenants were only entitled to the interest upon the proceeds of the royalty oil, and the remainder-men not entitled to anything until after the death of the life tenants. One very great difference between the two cases is, that here the party seeking the correction of the decrees made in the summary proceeding is not one of the infant remainder-men, but is the lessee and purchaser of the estate in remainder in the

oil and gas. The disability of infancy enables any of the infant remainder-men to sue for the correction of the erroneous decrees in the summary proceeding, at any time during their infancy, by their next friend, or in their own names, within six months after attaining the age of twenty-one years. The South Penn Oil Co. labored under no disability and cannot claim its day in court, allowed by law to infant parties.

It is insisted by counsel for appellant that it ought to be permitted to have the erroneous decrees in the summary proceeding corrected, because the infant remainder-men have the right to have them corrected at any time until the expiration of six months after they become of age. The grounds or principles upon which this claim is based are not pointed out in the brief. No authorities are cited. Unless those decrees are to be distinguished in character from ordinary judgments and decrees, affecting the interest of infants, there are some principles of law which apparently preclude the company from coming into court for the purpose of having the errors corrected. All the authorities hold that an infant is as much bound by a decree against him as an adult, until reversed, and he himself is not permitted to impeach it, except for fraud, collusion or error. *Lafferty* v. *Lafferty,* 42 W. Va. 783. Hogg's Eq. Pr. 340; 10 Am. & Eng. Ency. Law 694; *Ralston* v. *Lahee,* 8 Ia. 17. Some of the cases go further and hold that a judgment against an infant is voidable, if at all, only by direct proceeding brought by him for that purpose. *Cannon* v. *Alsbury,* 10 Am. Dec. 709; *Beeler* v. *Bullett,* 13 Am. Dec. 161; *Siles* v. *Eldridge,* 14 Am. Rep. 769. The error in the decree sought to be corrected relates to the disposition of the proceeds of the sale. As has been shown, the proceeds of the royalty oil is regarded as the purchase-money of the entire oil in the land. The court has decreed that that purchase-money be paid to persons who are not entitled to it. It is not contended that there is any other error in those decrees. Is it or was it the duty of the oil company to see to the application of the purchase-money? The court having made an erroneous disposition of that fund, will that error invalidate the title of the company to the oil purchased, or can the company be required to make good the loss of that fund under the order of the court? On this question of the application of purchase-money, it has been said that "A purchaser under a decree can have no concern with the disposition which the court may make of the purchase-

money, nor can his right as a purchaser be in any manner affected by any irregularity in the case or misapplication of the purchase-money. When he pays the whole of the stipulated amount, he is entitled to an absolute conveyance of the whole right of the parties to the suit, whatever that may be, and is not bound to look to anything beyond the express terms of his contract with the court, as reported by the trustee employed to make the sale." *Coombs* v. *Jordan,* 22 Am. Dec. 236, 277. In that case the Court lays it down as a well settled principle of law that "The only cases in which the purchaser is bound to see to the application of the purchase-money, are where a trust has been raised by deed or will for the sale of the estate for the payment of debts and the like, and the trust so raised is of a defined and limited nature." Citing Sug. Ven. Pur., 366. In *Woodwine* v. *Woodrum,* 19 W. Va. 67, JUDGE GREEN discusses the several instances in which a purchaser is required to see to the application of the purchase-money, and it is clear from what he says that the principle does not extend further than is stated in *Coombs* v. *Jordan.* So the appellant cannot base its claim for relief upon the doctrine of the application of purchase-money, unless there is something in the nature of the case which qualifies these propositions.

If it could be said that the error sought to be corrected invalidates the title of the purchaser or makes it voidable by the infants, then the purchaser would no doubt be entitled to withhold the balance of his purchase-money until the error should be corected, and to call for a correction of. it to perfect his title. But here again stands section 8 of chapter 132, Code, athwart the path, saying "If a sale of property be made under a decree or order of a court, and such sale be confirmed, though such decree or order be afterwards reversed or set aside, the title of the purchaser at such sale shall not be affected thereby; but there may be restitution of the proceeds of sale to those entitled." Broad as the provision is, it is subject to several exceptions. Where the purchaser is a party to the suit and a creditor and the moving cause of the sale, he is not protected. *Martin* v. *Smith,* 25 W. Va. 579; *Buchanan* v. *Clark,* 10 Grat. 164; *Dunfee* v. *Childs,* 45 W. Va. 155; *Gilpin* v. *Paige,* 18 Wall. 374; Bar. Chy. Pr., 1095; Daniel Chy. Pr., 1095. Nor is he protected when the error is not in the decree of sale, but in the decree confirming it. *Sinnett* v. *Cralle,* 4 W. Va. 600. When neces-

sary parties are not before the court the title falls with reversal of the decree. *Peck* v. *Chambers,* 44 W. Va. 270; *Turk v. Skiles,* 38 W. Va. 404; *Underwood* v. *Pack,* 23 W. Va. 704. *Dickel* v. *Smith,* 38 W. Va. 635, may be regarded as, at least, indicating another exception. No decision of this Court holds, that said section 8 of chapter 132, Code, applies to the sale of infant's lands, but it has been so held in Virginia, *Lancaster* v. *Barton,* 92 Va. 615; *Cooper* v. *Hepburn,* 15 Grat. 551. It cannot be doubted that said section was intended so to apply. See Rev. Rep., 1849, p. 878, note. The revisors, after stating that it had been decided that the title of a purchaser at judicial sale might be overthrown by subsequent proceedings in a suit in which he was not a party, after twenty years or more had elapsed, and that where infants were in the case his title might be impeached after a greater length of time, say, "We think this evil ought to be guarded against. If it be deemed proper, it may be required that when the lands of infants are sold the court shall require bonds to refund, in case the decree of sale should be reversed or set aside on rehearing or review."

This only makes it the more necessary and proper that courts, in the exercise of the statutory power given them for the sale of the real estate of persons under the disability of infancy, should comply strictly with the statute and take all precautions necessary to preserve the estates of such persons. Such sales differ widely from those made to satisfy the debts of adults in ordinary creditors' proceedings. The statute permits no sale except upon a showing that it will be beneficial to the infant. It is *ex parte* in its nature, and is often unnecessary except in the sense that it will be beneficial to the infant. It is the exercise of a power conferred by statute. *Faulkner* v. *Davis,* 18 Grat. 650. Like every other power its terms and conditions ought to be fully complied with. Whether a departure from these terms would be fatal to the title of the purchaser, because the court is acting in excess of the statutory power conferred upon it and, therefore, without jurisdiction, it is not necessary to decide here, as will be shown. It has been so held in a number of states. In Kentucky it has been held that a court has no jurisdiction to order a sale under the statutory provisions of that state for the sale of lands of infants, except upon a strict compliance with all the terms of the statute, and that said statutes must be strictly construed. *Paylon* v. *Alcorn,* 7 J. J.

Marsh. 502; *Paul* v. *Paul*, 3 Bush. 483; *Barber* v. *Hokewell*, 1 Metc. 260; *McGowan* v. *Way*, 1 Metc. 418; *Barrett* v. *Church-hill*, 18 B. Mon. 387; *Wyatt* v. *Mansfield*, 18 B. Mon. 779; *Carpenter* v. *Strother*, 16 B. Mon. 289; *Woodcock* v. *Bowman*, 4 Metc. 40; *Watts* v. ————, 4 Metc. 61; *Mattingly* v. *Read*, 3 Metc. 524; *Bell* v. *Clark*, 2 Metc. 573; *Wells* v. *Cowherd*, 2 Metc. 514; *Vowless* v. *Buchanan*, 6 Dana 466; *Singleton* v. *Coger*, 7 Dana 479. However, in *Thornton* v. *McGrath*, 1 Duv. 349, the court held that where the word "void" is used in the statutes and decisions of Kentucky in reference to sales of the lands of infants it should be considered as meaning voidable, for the reason that infants ought not to be deprived of the benefit of sales which were beneficial to them. The New York courts construe the statute in the same way and hold that sales made in proceedings which are not in strict conformity with the statute are void. *Battell* v. *Torrey*, 65 N. Y. 294; *In Re Valentine*, a lunatic, 82 N. Y. 184; *Ellwood* v. *Northcup*, 106 N. Y. 172. In *Battell* v. *Torrey* it is held that "The rule applies, in such case, that where proceedings are authorized by statute in derogation of the common law, by which the title of one is to be divested and transferred to another, every requisite of the statute having the semblance of benefit to the former must be strictly complied with or the title will not pass." The same rule has been applied in N. C. *Den* v. *Fletcher*, 1 Ired. L. 259; *Duckett* v. *Skinner*, 11 Ired. L. 431; *Spruill* v. *Davenport*, 3 Jones 42. Other cases from other states to the same effect might be cited. In *Snavely* v. *Harkrader*, 29 Grat. 112, it is held that the statute authorizing the sale of the real estate of an infant should be strictly construed. Section 7 of chapter 83, Code, providing for the sale of lands of infants requires that "The proceeds of sale shall be invested under the directions of the court, for the use and benefit of the persons entitled to the estate, and in case of a trust estate, subject to the uses, limitations and conditions, contained in the writing creating the trust." This is all a part of the proceeding, as much as an actual sale of the land, and is in the spirit and terms of the early Virginia cases. As far back as 1823, in *Garland* v. *Loving*, 1 Rand. 396, Judge Coalter, delivering the opinion of the court, said: "If, under all these circumstances, a sale, manifestly to the interest of the infants, can be made, this court thinks it will be proper to decree the same, taking care that the proceeds

thereof shall be properly invested and secured for the use of the *cestui que trusts,* according to their rights as they now appear, or may hereafter appear, or of any future *cestui que trust,* who may be entitled under the deed aforesaid, with liberty to the parties, from time to time, to appeal to the court for further directions." It is manifestly not to the interest of infants and especially of persons unborn who may be interested in a fund, that that fund be wasted, squandered or lost by reason of an error, accident or mistake in the exercise of the power thus confered, and it is hardly to be conceived that such was ever the legislative intent. Said section 7 further provides: "But into whosoever hands the said proceeds may be placed, the court shall take ample security, and from time to time require additional security, if necessary, and make any other orders for the faithful application of the fund, and for the management and preservation of any property, or securities in which the same may be invested, and for the protection of the rights of all persons interested therein, whether such rights be vested or contingent." The decree authorizing the sale in this instance on its very face and by its terms, violated said section 7. Whether in thus decreeing the sale, it exceeded its jurisdiction is a question which might arise in the future to at least harass and annoy the purchaser it is not necessary to determine. In that sense and to that extent its title is certainly beclouded and its interest endangered. Works on Courts and their Jurisdiction, 17; *Ex Parte Lange,* 18 Wall. 163; *Bigelow* v. *Forest,* 9 Wall. 351; Bailey on Jurisdiction, ss. 22, 23, 24.

But as before stated it is not necessary to decide or hold in this case that the error of the court in neglecting to preserve and secure for the benefit of the devisees of the will, the fund arising from said sale, and in turning that fund over to parties who are not entitled to it, would invalidate the title of the purchaser or make him answerable hereafter for it to such of the infants as might undertake to impeach said decrees. All the purchase-money has not been paid. As soon as the appellant discovered that the error had been committed and that the action of the court was erroneous, it ceased to pay, and denies the right of the court to compel it to make further payments until said error is corrected and its title perfected. This a purchaser clearly has a right to do, as has been held in a number of Virginia cases. In the case of *Goddin* v. *Vaughn,* 14 Grat.

102, the purchaser having discovered a defect in the title, declined to pay the purchase-money, and the court compelled him to do so but it also perfected his title as nearly as could be done. In that way the error and defect were corrected at the suit and at the instance of the purchaser, just as is sought to be done here. In *Daniel* v. *Leitch,* 13 Grat. 195, it is held that "After a sale of infants' lands has been confirmed by the court, although the proceeding has been irregular, yet if the title of the purchaser can be made good, and it is for the interest of the infants to confirm the sale, the purchaser will not be released from his purchase; but if the interest of the infants is injured by the sale it will be set aside." The court further holds that "Courts of equity have at least as large a discretion in giving time to perfect the title in cases of sales under their decrees, as in cases of purchases by private contract." The same principle is laid down in *Cralle* v. *Meem,* 8 Grat. 496. All these cases were decided after the statute, as found in section 8 of chapter 132, Code, was enacted. How far the fact that the appellant here has notice of the error might affect its title it is not necessary to determine. Some of the cases hold that where there has been an erroneous or irregular sale of an infant's lands, a *bona fide* purchaser, without notice, will be protected. It cannot be said that the appellant belongs to that class of purchasers. It has notice. The improper disposition of that fund was shown in the very terms of the decree of sale and in the deed accepted by it. That it was not known at the time of the purchase that the decree was erroneous can make no difference. Ignorance of the law does not excuse. Appellant admits that since the decision in the case of *Wilson* v. *Youst,* it has known the decree to be erroneous. Ordinarily, a purchaser at a judicial sale has no concern with the disposition of the purchase-money. It is always so when the decree is free from error. But here there is not only a misapplication or wrong disposition of the purchase-money, but a positive, open and bald violation of the statute in decreeing the sale. That is a much more serious matter than a mere wrongful disposition of the proceeds of a sale properly made. And if the purchaser has notice of it before he pays the purchase-money, it may be possible that such error would affect his title.

Whether he has notice of it or not, under the peculiar circumstances of the sale in this instance, the error may be fatal to the

title of the purchaser as to persons not *in esse*. This is a limited estate. After the death of the life tenant, the land goes to her heirs. She is not dead.´ Nobody can tell who her heirs will be until that event takes place.· Three children have been born to her since the sale was made. Others may yet be born. Are these persons not *in esse* bound by a decree which fails to provide for their interest by preserving the fund? Can the decree take away from them their interest in the land without securing to them an interest in the fund which is substituted for the land? The principle of representation in such cases is well established. Unborn children who stand in the same class and have the same rights as persons living are deemed to be before the court by representation in all proceedings for the sale of their interest. This is an old and well settled principle of law. *Baylor* v. *Dejarnett,* 13 Grat. 166; *Harrison* v. *Turnbull,* — Va. —; 41 L. R. A. 703; *Faulkner* v. *Davis,* 18 Grat. 651; *Bofil* v. *Fisher,* 3 Rich. Eq. 1; 55 Am. Dec. 627; *Mead* v. *Mitchell,* 17 N. Y. 210; 72 Am. Dec. 455; *De Leon* v. *Barrett,* 22 S. C. 412; *McArthur* v. *Scott,* 113 U. S. 340; *Doge* v. *Cole,* 97 Ill. 338; *Gifford* v. *Hort,* 1 Sch. & Lef. 386; *Finch* v. *Finch,* 2 Ves. Sr. 491; *Leonard* v. *Sussex,* 2 Vern. 527; *Reynoldson* v. *Perkins,* 2 Ambl. 564; *Wills* v. *Slade,* 6 Ves. Jr. 498; *Van Lew* v. *Parr,* 2 Rich. Eq. 55; *Hale* v. *Hale,* 20 L. R. A. 247. But this rule is said to be subject to an important qualification, and the question arose in a case very similar to this. A purchaser, at a tax sale, in a partition suit, of land limited by will to the widow of the testator for her natural life, remainder for life to the daughters of the testator and remainder in fee to their children, refused to complete his purchas because the judgment took no notice of the rights of the unborn children, and the court held that said judgment did not bar the future contingent interest of such unborn issue, and that the purchaser could not be compelled to accept the defective title. It was held in the same case that "A judgment and sale in partition only concludes contingent rights of persons not in being, when the judgment provides for and protects such interest, by substituting the fund derived from the sale of the land in place of it, and preserving the fund to the extent necessary to satisfy such interest." *Monarque* v. *Monarque and others,* 80 N. Y. 320. As has been pointed out, the decree under which the appellant here made its purchase makes no pretense of preserving the fund so as to protect and secure to after-born children their

interest therein. On the contrary said decree scatters, disburses, dissipates and destroys that fund, and by its terms has made the purchaser a party to that devastation and wrong. The statute required the court to invest that fund "for the use and benefit of the persons entitled to the estate, and in case of a trust estate, subject to the uses, limitations and conditions contained in the writing creating the trust." Who are the persons entitled to the estate in this instance? Undoubtedly, the unborn children of Armina Ammons as much as her living children. Had the court the power thus to pass the title out of them without preserving for their benefit the proceeds of the sale? The supreme court of appeals of New York has said that it cannot be done. To say the least it is a serious and grave question casting upon the purchaser's title imminent danger. The peculiar circumstances of this case and the express statutory provision applicable to it may class this sale as another exception to section 8 of chapter 132, Code. The purchaser knows not the day nor the hour when his title may be called in question. It is confronted with the proposition now, for the bill assails that title on behalf of the said three after-born children. So we are not called upon to determine the possibility of future litigation in reference to that title, to determine whether the purchaser may be subjected to it. The injured persons are already clamoring for its property and deny that it has a good title to it. "A purchaser cannot be compelled to accept a doubtful title, nor one which the court cannot warrent to him, the question being not whether the title is good but whether it is clearly so. A title is doubtful where its condition invites litigation; a purchaser cannot be compelled to take it if he thereby exposes himself to a law-suit." *Kostenbader* v. *Spotts,* 80 Pa. 430. It is not intended to approve all this quotation and it is only given to show that to entitle a purchaser to relief it is not necessary to determine that the defect of which he complains is certainly fatal. In view of all this the conclusion is that the appellant is entitled to relief, and it remains to inquire whether upon the state of the pleadings it may have it in this suit.

As already intimated, this sale may stand upon an entirely different footing from ordinary judicial proceedings. It is undoubtedly in the nature of the execution of a statutory power of sale conferred upon the court, rather than an adversary proceeding involving nothing more than the exercise of the jurisdic-

tion of the court to hear and determine between parties. In *Bright* v. *Boyd,* 1 Story 478, Mr. Justice Story, in a case very similar to this said: "Now it is a well settled doctrine that although courts of·equity may relieve against the defective execution of a power created by a party, yet they cannot relieve against the defective execution of a power created by law, or dispense with any of the formalities required thereby for its due execution, for, otherwise, the whole policy of the legislative enactments might be overturned." How apt this language is when applied to the present case. The legislature never intended that any person, living or yet to be born, should be deprived of his estate by the power conferred upon a court of equity to sell in chapter 83 of the Code. Its express provisions for the investment and preservation of the fund are conclusive of this, even if such provision were necessary to show the intent. The error of.sale discussed by him was not such as has been conferred upon the court in respect to sales of the real estate of infants but it was similar. It was that of an administrator to sell the real estate of his intestate. He had failed to give the bond required by law and his sale was held to be void beyond the power of correction by a court of equity. Many of the Virginia judges, in discussing the statute and proceedings for the sale of the lands of infants, refer to it and discuss it as a power of sale and not as an adversary proceeding, although its exercise often becomes necessary in such cases by reason of the fact that infants are interested in the land.

The statute not only requires the court to make the proper investment of the fund and secure it for the use and benefit of persons entitled to it, but also clothes the court with ample power to control and preserve the fund and make application of it to the appointed uses and purposes contained in the will or other writing. Its language is "But into whosoever hands the said proceeds may be placed, the court shall take ample security, and from time to time require additional security, if necessary, and make any other proper orders for the faithful application of the fund, and for the management and preservation of any property, or securities, in which the same may be invested, and for the protection of the rights of all persons interested therein, whether such right be vested or contingent." Does this contemplate that the court, after decreeing a sale, the execution of that decree, the confirmation of the sale, payment of the purchase

money, and the execution of the deed, may dismiss the matter entirely as it does any ordinary cases between party and party? If so, why did the legislature clothe it with such ample powers and mandatorily say that it shall exercise them, without waiting for application by any one to call forth its exercise in that respect? How can the court divest itself of these powers or dismiss the proceeding from its control in any particular case until after it shall have fully administered and wholly applied the proceeds of the sale to the uses and purposes specified in the will? If it cannot so relieve itself by the mere sale of the land, then the fund in this case must remain under the control of the court until after the death of Armina Ammons, for it cannot be distributed to the parties entitled thereto nor applied to "the use and benefit of the persons entitled to the estate" until that event happens, for until that time it cannot be known who her heirs are. *Nemo est haeres viventis.* Until that time, it is not a matter of construction, but of express statutory provision, that the court shall make any proper orders for the faithful application of the fund and for the protection of the rights of all persons interested therein, whether such rights be vested or contingent. Why, therefore, cannot the court correct its own error in respect to such fund while it has the funds in its hands or in the hands of the purchaser and subject to its order? If it has made an order improperly disposing of or applying the fund but that order has not been executed and its powers must be invoked to get control of the fund, and it must come into its hands and subject to its control, why has it not the power to correct the error, stop the fund in its own hands and hold it for the benefit of the persons entitled to it? Is it to be fettered and hampered in the exercise of these powers by all the limitations and rules applicable to adversary proceedings, or is it to have a free hand to carry out the provisions of section 7 of chapter 83, Code, in dealing with that fund? How far it is to be so limited in this respect it is unnecessary to say, further than that as long as the fund is within its control, as long as the purchase money of the land has not actually passed, by its erroneous decree, into the hands of persons who are not entitled to it, it has full power to correct its error, take charge of the fund and make proper application of it. Unless the court takes this action at the instance of the purchaser by way of objection to its being required to pay the balance of the purchase money on account of errors and defects en-

dangering its title, it is not probable that any application will be made for the correction. The injured persons are not yet born and there is nobody here to complain for them. The life tenant, who is entitled to none of the *corpus* of the fund, is taking half of it and it is not likely that she or her husband, the legal as well as the natural guardian of the living children, will ever complain. They are the beneficiaries of the wrong. As the older children become of age, their indiscretion leads them to accept now a portion of their estate in satisfaction of the whole. The guardians of the younger children, profiting by the wrong, make no claim on their own behalf. All are preying upon, instead of defending, the interests of the unborn objects of the testator's bounty. The purchaser realizing, under this state of things, that its condition must grow worse all the time, ceased to pay the royalties as soon as it discovered the error, and denies the right of the court to compel it to pay until the error is corrected as far as may be and its title is made as good as the court can make it. It has already been shown that this is the right of the purchaser under any judicial sale. The summary proceeding being one which the court had no right or power to dismiss, so far as it relates to the custody and control of the fund arising from the sale, it cannot be deemed to have so dismissed it, and the matters in controversy presented here being such as relate to, and are involved in, the very existence of that fund as well as the title which was given in exchange for it, it is eminently proper that the whole matter be settled and adjusted in, and as a part of, said summary proceeding if that can be done.

The appellant's answer and cross-bill should not have been dismissed. Whether they be called a cross-bill and answer or an original bill in the nature of a bill of review, they set out good grounds for relief and all other interested parties have been summoned to answer the allegations and prayer for relief. The statutory limitation of three years forbids that they be treated as a bill of review. Code, chapter 133, section 5. It is not necessary, however, to consider them anything more than a petition in the original summary proceeding. One of the purposes of the bill filed by the plaintiff was the enforcement of the payment of the purchase money under the decree made in the summary proceeding in which the oil and gas were sold. In response thereto the purchaser sets up the error and defect in the proceedings, beclouding and endangering its title, and avers its

willingness to pay when the error is corrected. This is done in the answer and cross-bill. All this is in substance and effect, a rule against the purchaser to show cause why it should not be proceeded against for the failure to comply with the terms of its purchase, and, in answer thereto, the petition of the purchaser, setting up the error and defect, as the reason for the failure to pay and why it should not be proceeded against, and praying a correction of the error and the perfecting of its title. The cross bill and the answer of the appellant should, therefore, be treated as a petition in the original summary proceeding, and relief should accordingly be granted upon it therein. Is there any precedent or authority for so treating it? There is. In *Cralle* v. *Meem*, 8 Grat. 496, the court held: "Though such decree for a sale of land has been prematurely made, yet if the sale is made and confirmed, the court will not set the sale aside on the petition of the purchasers, if upon the hearing it appears that the sale is beneficial to the infants. The application of the purchasers, in such case, to have the sale set aside, should be by petition in the cause. And if they proceed by bill to enjoin the collection of the purchase money, and have the sale set aside, the bill should be treated as a petition in the cause, and be brought to a hearing with it." All the parties to the original summary proceeding are before the court. All the decrees and orders made and papers filed in said proceeding are brought into this cause by the pleadings as fully as they would have appeared had the appellant proceeded by petition. There is, therefore, nothing in the way of treating its cross-bill and answer as such petition, and affording the relief prayed for.

In respect to the cross-assignment of error, based on the action of the court, in decreeing that the three after-born children share equally with the others in the one-half of the one-eighth royalty, it is to be remembered that the decree does not deny them title in the land except possibly by implication. There is no express adjudication to that effect. If they, as well as the appellant, can be restored to their rights, without disturbing the title of the appellant, it should be done, and the decree, allowing them to participate with the others in the fund, is a step in that direction. The sale was clearly advantageous to the infants and should be perfected, ratified and completed if possible. How far this can be done will be disclosed in the further progress of the proceedings. Until that time the whole matter should be

left open, which necessitates a reversal of the decree in that respect as being premature.

For the reasons stated, the decree of the circuit court must be reversed and the cause remanded with directions to treat and consider the answer and cross-bill of the South Penn Oil Company as a petition in the summary proceeding for the correction of error in the decrees and proceedings therein, affecting its title under its said purchase of the oil and gas, and proceed thereon accordingly, and further according to the rules and principles governing courts of equity and the statutes under which said proceeding was instituted.

*Reversed.*