# WHEELING.

## McFADDEN *v.* CRAWFORD.

Submitted June 2, 1892.—Decided June 11, 1892.

1. FIXTURES—PERSONALTY—DETINUE.

   Where a rolling mill company was operating a rolling mill erected on a three-acre lot, and had purchased two large pieces of machinery, weighing from fifty to sixty hundred weight, known as "railroad spike machines," for the purpose of attaching them to said mill, and manufacturing railroad spikes with them, had brought said machinery on a car which was standing on a railroad switch belonging to said rolling mill company, near said mill, on said lot, one of which machines was unloaded and the other still on the car, and the foundations in said rolling mill had

been prepared to receive said machines, and while in this condition they were levied on under an attachment against said rolling mill company, and sold as personalty, *held* that, under this state of facts, said machines were a part of the realty of said rolling mill company, and could not be levied on and sold as personalty.

2. FIXTURES—PERSONALTY—DETINUE.

An action of detinue for the recovery of said machines could not be maintained by the purchaser of said machines under an attachment levied on them as personalty, for the reason that under the facts shown they must have been regarded as part of the realty.

3. FIXTURES—PERSONALTY—DETINUE.

If railroad spike machines have been brought by the owner of a rolling mill and placed upon the mill lot with the *bona fide* intention of attaching them to the mill, although not yet actually attached thereto, and they are necessary for the purpose for which they are to be used, they must be regarded as part of the realty, and not liable to be levied-upon and sold as personalty under an attachment.

*Meighen & Oldham* for appellant :—The court erred :

1st.—*In giving plaintiff's instruction to the jury.* See 16 W. Va. 428.

2nd.—*In refusing to give defendant's instruction to the jury.* See 16 W. Va. 428 ; 26 Gratt. 752 ; 32 Gratt. 727 ; 15 Ohio St. 446 ; 18 Am. St. 903 ; 13 Am. Dec. 517 ; 37 Am. Dec. 490 ; 19 Am. Dec. 201 ; 17 Am. Dec. 680 ; 26 Am. Rep. 286 ; Code (1891) c. 74, s. 3.

3rd.—*In refusing to permit defendant's offer of testimony as contained in bill of exceptions No. 3.*

4th.—*In refusing to set aside the verdict and grant a new trial.* See 34 W. Va. 260 ; Code (1891) c. 102, s. 6.

*H. Criswell* for appellee.

ENGLISH, JUDGE :

This was an action of detinue, brought by G. S. McFadden against James Crawford in the Circuit Court of Marshall county on the 31st day of August, 1889, to recover two railroad spike machines, of the alleged value of five hundred dollars each. The defendant demurred to the plaintiff's declaration, which demurrer was overruled. He then pleaded the general issue, and the case was submitted

to a jury, which resulted in a verdict in favor of the plaintiff for the recovery of the possession of said railroad spike machines, if that could be had, and, if not, the value thereof, which they ascertained to be five hundred dollars for each machine, and two hundred and fifty dollars damages for the detention of said property; and thereupon the defendant, by his attorneys, moved the court to set aside the verdict of the jury, and grant him a new trial, upon the ground that the verdict was contrary to the law and the evidence; and on the 15th day of November, 1890, the parties appeared by their attorneys, and the plaintiff remitted all of the damages found by the jury in their verdict except thirty dollars, and the court, after considering the motion made by the defendant at a former term for a new trial, overruled the same; and, it appearing that the plaintiff was already in possession of the two railroad spike machines mentioned in the writ and in the verdict of the jury, judgment was rendered that he retain the possession of the same, and that he recover thirty dollars damages of the defendant and costs.

From this judgment the defendant applied for and obtained this writ of error.

The following facts were agreed upon on the trial of said action: On the—— day of ——, 1882, the Andrew Kloman Steel & Iron Company owned what had theretofore been known as the "Ohio Valley Iron Works," consisting of about three acres of ground, situated on the bank of the Ohio river in Moundsville, W. Va., upon which there was a large rolling mill building and other buildings. On said date the said Andrew Kloman Steel and Iron Company was running and operating said rolling mill, and was the owner of two spike machines, consisting of two large pieces of machinery, weighing from fifty to sixty hundred weight; and the Andrew Kloman Steel & Iron Company had recenty bought said rolling mill, and was fitting it up with a view to manufacturing muck iron, bar iron and railroad spikes; and on the —— day of ——, 1882, the said Andrew Kloman Steel & Iron Company brought the said spike machines to Moundsville, W. Va., to place them in said rolling mill as a part of the machinery of said rolling mill, to

be run in connection with other machinery in the mill in the manufacture of railroad spikes. Said spike machines were brought new to Moundsville, W. Va., and were brought on a car, and the car was run in upon a railroad switch belonging to said Andrew Klowan Steel & Iron Company, upon their said rolling mill grounds, and one of the said spike machines was unloaded and the other was still on the car, but had been partially moved, and the foundation in said rolling mill had been prepared to receive said machines.

While in this condition on the 13th day of May, 1882, said G. S. McFadden, who had brought suit against said Andrew Kloman Steel and Iron Company, caused an attachment to be levied upon said spike machines as the personal property of the said Andrew Kloman Steel & Iron Company. After the levying of said attachment the said Andrew Kloman Steel & Iron Company proceeded at once to place said spike machines in said rolling mill upon the foundation prepared for them, and connected the said spike machines with the other machinery in said rolling mill with belts, and proceeded to manufacture railroad spikes; and the said spike machines were used the same as any other machinery in said rollihg mill.

On the —— day of ———, 18—, said G. S. McFadden obtained a judgment against said Andrew Kloman Steel & Iron Company, and obtained an order of the court to sell said spike machines, and they were sold on the 12th day of March, 1884, at which sale said G. S. McFadden became the purchaser. At the time of said sale said spike machines were standing in said rolling mill, where and as they had been placed as before stated; and that, at the time said rolling mill property was sold under a certain deed of trust to one J. D. Weeks, the said spike machines were still in the rolling mill as they had been placed as before described.

Said Joseph D. Weeks had sold said rolling mill building, including all machinery therein belonging to him, to parties at Irongate, Va., who had sent hands to remove the same to that point; and James Crawford, the defendant in this suit, had the contract to remove said rolling mill, and had removed most of the mill and machinery, and had commenced to move these spike machines, and had

removed one of them from its foundation, and was ready to remove the other, when the suit was brought against said James Crawford. Said G. S. McFadden, on the 26th day of April, 1886, at the time said rolling mill property was being sold, informed said Joseph D. Weeks that he claimed said spike machines.

It also appears that the deed of trust executed by A. C. Kloman and others, dated May 1, 1882, was admitted to record on the 13th day of May, 1882, the same day on which said attachment was levied; and the language of said deed, after describing the lots, is as follows:

"Also all the buildings, improvements, fixtures, appurtenances now or which shall hereafter be put upon the above-described lots and lands, or any part thereof, and all the machinery, engine, boilers, and tools pertaining to the works in operation or to be hereafter operated on said lots and lands, or any part thereof, including as well the machinery, engine, boilers, and tools now in use in connection with said works as those which shall hereafter be brought to and kept in or about the same for the purpose of the business carried on upon said lots and lands, or any part thereof."

The right to the possession of said spike machines asserted by the plaintiff in this case he claims to have acquired by reason of his purchase at the sale under said order of attachment, and the defendant claims to be entitled to the possession of the same under a sale made under a decree of court to J. D. Weeks in enforcement of said deed of trust. The demurrer to the declaration was not insisted on by the plaintiff in error, and, as the declaration appears to be well enough, we must consider that it was interposed out of abundant caution.

The question, however, which meets and confronts us at the threshold of this case is whether the plaintiff, McFadden, by reason of the purchase made by him under the attachment sale, acquired any right or title to the possession of the property in question. He states in his own deposition that he bought said machines as personal property, and got no deed for them; and the question is whether property of this character, which has by law become a part of the real estate, can be levied on under an attachment, and sold as

personalty, and the purchaser at such sale thereby acquire title to the possession of the property so sold.

It is not claimed in this case that the land on which said rolling mill was located, or any part of the same, was levied on under this attachment. If it had been levied on as realty, the statute prescribes how the levy should be made, to wit, "by an indorsement thereon, or upon a paper annexed thereto, stating, as near as may be, the quantity or the supposed quantity and the location thereof." And, although none of the attachment proceedings were offered in evidence, it does appear affirmatively that said machines were levied upon and sold as personal property, and that they were purchased by the plaintiff, G. S. McFadden, as such; that no deed was executed to said McFadden therefor, and that possession was never delivered to him of said property, but, on the contrary, that said spike-machines were levied upon on the 13th day of May, 1882, under the attachment sued out by said McFadden, but that the Andrew Kloman Steel & Iron Company retained possession of the same, and placed them in said rolling mill, upon the foundation prepared for them, and connected them with the other machinery in said rolling mill by belts, and proceeded to manufacture railroad spikes; and that although they were sold under an order made in said attachment suit on the 12th day of March, 1884, and purchased by said McFadden as personal property, they were allowed to remain in said rolling mill in the possession of said steel and iron company, and that they so remained until the 26th day of April, 1886, when the same were sold to J. D. Weeks under the decree enforcing said trust-deed, and that they were yet in the rolling mill at the time said action of detinue was instituted on the 31st day of August, 1889.

This we must regard as a long acquiescence on the part of said McFadden in the action of said company in taking and retaining the possession of said property, and, even if it could have been properly regarded as personal property, said McFadden, by consenting to the same remaining in possession of said company for such a length of time, thereby released his lien.

This property, however, at the time of the levy of said

attachment, was clearly a part of the realty. In the case of *Patton* v. *Moore*, 16 W. Va. 428 (points 1 and 2 of syllabus) this Court held :

"1—The true rule in determining what are fixtures in a manufacturing establishment, where the land and buildings are owned by the manufacturer, is that, where the machinery is permanent in its character, and essential to the purpose for which the building is occupied, it must be regarded as realty, and pass with the building, and whatever is essential to the purposes for which the building is used will be considered as a fixture, although the connection between them be such that it may be severed without physical or lasting injury to either."

"2—If an engine and boiler have been bought by the owner of a mill, and hauled upon his grounds into the mill yard, with the *bona fide* intention of attaching them to the mill, although not yet actually attached thereto, and they are necessary for the purposes for which they are to be used, they must be regarded as a part of the realty, and not liable to the levy of an execution as personal property."

The rule laid down by the Court of Appeals of Virginia is found in the case of *Green* v. *Phillips*, 26 Gratt. 752, where it was held :

"The true rule of determining what are fixtures in a manufacturing establishment, where the land and buildings are owned by the manufacturer, is that, where the machinery is permanent in its character, and essential to the purposes for which the building is occupied, it must be regarded as realty, and passes with the building ; and that whatever is essential to the purposes for which the building is used will be considered as a fixture, although the connection between them be such that it may be severed without physical or lasting injury to either."

In that case executions had been levied upon certain machinery belonging to the Harrisonburg Lumber & Merchandise Company, to wit, upon a steam engine, which drove the machinery ; also upon a moulding machine and two planing machines ; and they were held in an injunction suit to restrain the sale to be part of the realty.

In Ewell, Fixt. p. 19, the author says : "Salt pans have

been held to pass with the realty and to belong to the inheritance, because adapted and designed for and incident to an establishment for the manufacture of salt. The principle is that certain things, personal in their nature, when fitted and prepared to be used with real estate, change their character, and appertain to the realty as an incident or accessory to its principal. Upon this ground we are satisfied that the claim in question, being in the mill at the time, and essential to its beneficial enjoyment, passed by the deed of the defendant to Asa Redington, under whom the plaintiffs claim independent of any reference as to usage."

The principle last above laid down in said case was approved in *Voorhis* v. *Freeman*, 2 Watts & S. 116. This was a case of a sale under *levari facias* on a mortgage of "a lot or piece of ground with one iron rolling mill establishment situate thereon, with the buildings, apparatus, steam engine, *etc.*, attached to said establishment; and the question arose between the vendee under said sale and subsequent execution vendee under a judgment against a former owner of the mill of the articles in question as chattels, which were iron rolls of different shapes and sizes, part of the machinery of said rolling mill, part of which were duplicates, but were necessary and proper for an emergency to replace broken ones, and all of which had at one time or another been in actual use in said mill—the question was simply whether such rolls were real or personal property, and it was held that the rolls in question passed as part of the freehold; but, even if they had not passed, they could not have been sold as chattels on *levari facias*."

Now in the case under consideration the plaintiff's right to the possession of the spike-machines rested solely upon the question, whether or not under said attachment sale he became the owner of the same, for the reason that he asserted no other claim to the possession than that which follows as a consequence from the ownership; and, in order that he should succeed in the case, it was incumbent on him to show that by reason of said attachment proceedings and the sale thereunder he acquired the ownership of said machines. These machines, under the authorities we have cited, must be considered to have been a part

of the realty at the time of the levy of said attachment; and before they could have been sold under said attachment there must have been a proper levy on the same.

Section 7, c. 151, of the Code of 1849 reads as follows: "Every such attachment (except where it is sued out specially against specified property) may be levied upon any estate, real or personal, of the defendant, or so much thereof as is sufficient to pay the amount for which it issues. It shall be sufficiently levied in every case by a service of a copy of such attachment on such persons as may be designated by the plaintiff in writing, or be known to the officer, to be in possession of effects, or be indebted to the defendant, and, as to real estate, by such estate being mentioned and described by indorsement on such attachment."

And in a proceeding under that statute it was held, in the case of *Clark* v. *Ward*, 12 Gratt. 440, point 4 of syllabus; "the indorsement on the process of attachment not mentioning or describing real estate, the attachment does not operate upon any such estate."

The statute which was in force at the time said attachment was sued out and levied by the plaintiff, McFadden, on said machines provides: "If the same" (meaning the attachment) "be levied upon real estate, it shall be sufficiently served by an indorsement thereon, or upon a paper annexed thereto, stating, as near as may be, the quantity, or the supposed quantity, and the location thereof;" and, as we have seen in the case of *Clark* v. *Ward*, *supra*, under a statute almost identical in its provisions, the indorsement on the attachment not mentioning or describing the real estate does not operate upon such estate.

It is not even pretended in this case that the attachment was indorsed as required by statute to constitute a lien upon real estate, but, on the contrary, it appears affirmatively by the testimony of the plaintiff himself that the spike machines in controversy were levied on and sold as personalty. Steph. Pl. p. 15, says: "The action of detinue lies where a party claims the specific recovery of goods and chattels or deeds and writings detained from him." The action does not lie for the recovery of real estate, and, in order that the plaintiff should recover in this case it was not only neces-

sary that he should show that he was entitled to the possession of the property claimed in his declaration, but also that said property is personalty, or goods and chattels, as therein described; but, as we have seen from the authorities above referred to, said machines must regarded as a part of the realty, and the action of detinue would not lie for their recovery.

The plaintiff asked the court to give the jury the following instruction: "The court instructs the jury that if they find from the evidence that the two railroad spike machines mentioned in plaintiffs' declaration were at the time this suit was brought the property of the plaintiff, and that he was entitled to the possession of the same when this suit was brought, and that the defendant, James Crawford, took possession of said machines, and was in possession thereof when this suit was brought, against the consent of the plaintiff, then he unlawfully detained the same, and you should find for the plaintiff."

To the giving of said instruction the defendant, by his attorneys, objected, which objection was overruled, and the court gave said instruction to the jury, and the defendant excepted, and this action of the court is assigned as error.

I think said exception was well taken, for the reason that it was calculated to mislead the jury as to the law of the case. The evidence showing that the machines, when levied upon, were part of the realty, it was improper to instruct them that the plaintiff was entitled to a verdict for them in an action of detinue; but I am of opinion that the court committed no error in refusing the following instruction, asked for by the defendant, and which is assigned as error:

"The jury are instructed that if they find from the evidence that the spike machines in question were subject to the lien of an attachment of the plaintiff in the year 1882, as personal property, and that, after said lien attached, the spike machines were placed upon a foundation prepared for them in the Andrew Kloman Steel & Iron Company's mill by such company, and were attached to the machinery of the mill, and used by the company in the manufacture of railroad spikes, and that said machines remained in said

mill until September, 1889, without demand being made for them by the plaintiff, and that the defendant, James Crawford, while acting for the owners of said rolling mill, attempted to remove said machines in September, 1889, and that the first demand was then made for said machines by the plaintiff, you must find for the defendant"—because it describes said machines as personal property, and the instruction speaks of the lien attaching, when the evidence in the cause shows that they were a part of the realty, and for that reason the instruction would have a tendency to mislead the jury.

The court, however, committed an error in refusing to set aside the verdict, and grant the defendant a new trial, for the reasons before stated. The court erred in fixing the damages at thirty dollars, for reasons stated by this Court in the case of *Unfried* v. *Railroad Co.*, 34 W. Va. 260 (12 S. E. Rep. 512.)

For the reasons before stated the judgment complained is of reversed, the verdict set aside, and a new trial is awarded the defendant.

REVERSED. REMANDED.