# CHARLESTON.

## ALEXANDER et al v. DAVIS et al.

Submitted September 12, 1896—Decided Nov. 28, 1896.

1. EQUITY PRACTICE—PARTIES.
  It is no longer the practice to join, as defendants in a suit in equity, for the purpose of discovery and costs against them, those who are not proper parties on other grounds.

2. CANCELLATION OF DEED—PARTIES—NOTARY PUBLIC.
  A party who is charged in the bill with participation in the forgery of a deed to land, and of taking and certifying a false and fraudulent certificate, as a notary public, of the acknowledgment of such deed, for the purpose of cheating and defrauding the true owners, to the interest and advantage of such notary public, and the object of the bill is to have such deed delivered up to be can-

59

42 465
42 550

42 465
46 60

42 465
48 277

42 465
50 603

42 465
52 130

52 131

42 465
53 519

42 465
56 586

42 465
61 218

celed, such notary, in his individual capacity, is a proper party defendant, on his demurrer to the bill.

3. INFANT DEFENDANT—GUARDIAN *Ad Litem.*

It is the duty of the court to appoint or see to the appointment of a proper guardian *ad litem* to every infant defendant in any pending suit, whether such infant defendant be married or single, as soon as such infancy appears.

4. INFANT DEFENDANT—ANSWER OF GUARDIAN *Ad Litem.*

And as it is the duty of such guardian to manage the case of the infant, and see to his interest, he must indicate his acceptance of the trust, by filing, adopting, or causing to be filed a proper answer.

5. INFANT DEFENDANT—GUARDIAN *Ad Litem*—ERROR.

It is error to decree against an infant defendant without appointing a guardian *ad litem*, who has shown his acceptance of the appointment by filing such answer; and for such omission a decree against an infant defendant is voidable, and will be reversed upon appeal.

6. ISSUE OUT OF CHANCERY—CONFLICT OF EVIDENCE—SOUND DISCRETION.

In a pending chancery case, in which there is such a conflict in the evidence as, in the opinion of the court, to render it proper such court may direct an issue thereon to be tried in such court or in any other circuit court. Such discretion must, in the nature of its exercise, be a wide one, yet it is a sound discretion, the exercise of which is reviewable.

TOMLINSON & WILEY and CHAS. E. HOGG for appellants, cited 27 W. Va. 451; 82 Ga. 687; Rice, Ev. 613-31, 788.

W. R. GUNN for appellees, cited Pom. Eq. § 114; Sand's Suit Eq. 231; 32 W. Va. 119; 22 W. Va. 1, 356, 461; 11 W. Va. 584; 20 Gratt. 147; 11 Gratt. 752; 1 Dan'l Ch. Pl. & Pr. (4th Ed.) 844, 845, note, 850, note; 2 Munf. 310; 6 J. J. Marsh. 51; 10 W. Va. 49; 3 S. E. Rep. 690; 7 Eng. Law and Eq. Rep. 578; 33 Gratt. 548.

HOLT, PRESIDENT:

On appeal from a final decree pronounced by the Circuit Court of Mason county on the 16th day of May, 1893, dismissing plaintiffs' bill.

The substance of bill is that James T. Alexander departed this life suddenly on the 30th day of March, 1891, being the apparent owner of a tract of land of one hundred

and thirty acres, situate in Mason county, on which he had resided with his wife for thirty years or more. They had no children, and his wife survived him. He left no will, but on the 15th day of July, 1891, one Adam Grandstaff produced to the clerk of the county court, and had admitted to record, an instrument purporting to be a deed of conveyance to Mrs. Eva Davis, his infant married daughter, from James T. Alexander, dated the 18th day of February, 1891, for the land in question. The widow and Mrs. Davis and her husband are in possession of the land.

The bill filed by the plaintiffs asserts this deed to be a forgery, and prays that it be declared void, and removed as a cloud from plaintiffs' title, that the widow be assigned dower, and the land partitioned among plaintiffs, decedent's brothers, *etc.*, and his heirs at law, and that, in the meantime, the clerk of the county court be restrained from delivering up the original deed to any one until further order, and for general relief. Various persons are made parties defendant, and among them the said Adam Grandstaff. The bill was sworn to, and the injunction granted. Adam Grandstaff appeared and demurred, the demurrer was sustained, and Grandstaff was struck out as a defendant by amendment. The widow, Elmira Alexander, filed her answer, sworn to, alleging that the deed assailed was valid. Mrs. E. E. Davis was a married woman, only seventeen years of age. No guardian *ad litem* was appointed to defend the suit for her, but she defended in her own name, and filed her sworn answer. General replications were made to these answers, and depositions of witnesses were taken and filed, the cause came on to be heard on the 16th day of May, 1893, when the circuit court, being of opinion that the plaintiffs were not entitled to the relief prayed for, dismissed their bill, with costs, and plaintiffs appealed.

No question was raised as to right of a court of equity to grant relief in such cases by ordering the instrument to be delivered up and canceled; for, although the plaintiff might have brought an action of ejectment, yet such remedy would have not been adequate and complete, since the existence of the deed in an uncanceled state would necessarily have a tendency to throw a cloud over the title. See 2 Story, Eq.

Jur. (13th Ed ) 10, 11, notes; 3 Pom. Eq. Jur. § 1377. Therefore a bill in equity is maintainable for the cancellation, as a cloud on the title, of a forged deed, which, upon the strength of a false certificate of acknowledgment, made by an officer duly authorized, has been put on record. The fact of the forgery is an extrinsic fact, depending upon parol evidence, and the grantee in the deed, in making title thereunder, would not be bound to prove the genuineness of the signature of the grantor; but could repose on the statutory presumption arising from its certificate of acknowledgment; and this circumstance, independently of any other consideration, gives the court jurisdiction. 2 Beach, Mod. Eq. Jur. § 561. See *Paper Co.* v. *O'Dougherty*, 81 N. Y. 474, 483; *Byerly* v. *Humphrey*, 95 N. C. 151. The whole case turns on the validity of this deed; and, on this point, seeing that the circuit court held the deed to be valid, there must be such a conflict in the evidence as, in the opinion of this Court, taking a different view as to its validity, renders it proper to direct an issue thereon to be tried by a jury in some circuit court; and we direct this to be done, because the case seems to involve a criminal offense, not on the part of the grantee, but on the part of the notary public who certifies to having taken the acknowledgment of the grantor, and because, in a case of so grave a character, the court below held that the plaintiffs had failed to show the deed to be invalid.

No case could better illustrate the fundamental importance of appointing guardians *ad litem* for infant defendants, whether they have been served with a process or not. The practice of serving them with process after they are fourteen years of age answers as a useful safeguard, and is based upon the presumed discretion of the infant, and especially his right, after that age, to nominate his own guardian proper. See section 4, chapter 82, Code, regulating such power of choosing his guardian. But such service is not necessary, and is only practiced because the infant may furnish some aid in the selection and appointment of his guardian *ad litem,* and formerly he could not be appointed until the infant had in some mode been brought before the court, but that is no longer necessary. The appointment

of the guardian *ad litem* is necessary, and his acceptance, to be shown by filing an answer, is also necessary—the one somewhat like process issued, and the other like process served, which is necessary to give the court power to decree against him. See *Hull* v. *Hull's Heirs*, 26 W. Va. 1. His power is confined to that particular case, and his duty is to manage the case, and see to the interest of that particular infant, who must in some way, by appointment and answer, be specifically named or designated, for some defendant may appear to be an infant who is not so named in the bill, as in this case. For an omission to appoint a guardian *ad litem*, a decree against an infant will be reversed upon appeal. See *Bank* v. *Ritchie*, 8 Pet. 128. It is error to enter a decree against infant defendants without assigning them a guardian *ad litem*. *McDonald* v. *McDonald*, 3 W. Va. 676; *Roberts* v. *Stanton*, 2 Munf. 129; *Swan* v. *Horton*, 14 Gray, 179; 1 Beach, Mod. Eq. Prac. § 47, note 48. When the infant is a married woman, as in this case, it is nevertheless necessary to appoint a guardian *ad litem*, and it is customary to appoint her husband, if he is a defendant with her. 1 Daniell, Ch. Prac. (5th Ed.) 163; *Colman* v. *Northcote*, 2 Hare, 148. See *O'Hara* v. *MacConnell*, 93 U. S. 150; *Ewing's Adm'r* v. *Ferguson's Adm'r*, 38 Gratt. 548.

We have in this case what is certified to be a true and correct transcript of the record and proceedings, "as fully and wholly as they now exist among the records of my office." At October rules, 1891, J. B. Menager was appointed guardian *ad litem* as to infant defendants. In the bill five persons are made defendants, specially named as infant defendants. And if J. B. Menager had accepted the appointment, and shown such acceptance by filing an answer, that, perhaps, would have been specific enough. It would, at least, have helped us to determine what persons the bill intended to name as infant defendants in the caption, which the body of the bill does not; nor does the bill allege any reason why these infants should be made defendants at all, or pray any relief for or against them, or why their father John E. Alexander, was made a party defendant. A reason for it may be inferred from the deed exhibited, but not the slightest mention of their interest is made by

any allegation in the bill. In fact, the infants are not mentioned at all in the body of the bill. It is true the final decree recites, *inter alia*, that the cause came on to be heard upon the answer of the guardian *ad litem* of the infant defendants herein; but, by the record as certified, no such answer appears, and, if it had been filed, it was the duty of the clerk to have certified that it was now lost or destroyed. We can not regard the bill as a nullity as to these infant defendants, for the deed filed as an exhibit shows them to be directly interested in the deed sought to be set aside.

Defendant Mrs. E. E. Davis, the grantee in the deed sought to be vacated and set aside, as not being the deed of James T. Alexander, deceased, is named in the caption of bill as E. E. Davis; in the body of the bill as the named daughter of defendant Adam Grandstaff. At that stage I suppose it would be assumed that she was an adult; but in the progress of the cause it soon appears, from the evidence, that she is but seventeen years of age, and the wife of one Charles S. Davis. She filed her sworn answer as an adult on the 12th day of May, 1893. No guardian *ad litem* was ever appointed for her, nor did any one, as such guardian, file or adopt any answer for her, although the record on which the cause was heard showed that she was an infant; and therefore none of the depositions could be read against her, nor for her. But she has no ground of complaint against a decree in her favor. In this condition of the pleadings, the court below could have entered against her no decree that would not have been voidable, and she could, at any time within six months after she had attained the age of twenty one years, have shown that fact alone as good cause against such decree. Section 7, chapter 132, Code.

"Adam Grandstaff, Notary Public," by that name and designation, was made a party defendant in the caption of the bill. The charge of the bill is "that James T. Alexander, deceased, did not acknowledge said pretended deed on the 18th day of February, 1891, or at any other time, as certified by said Grandstaff, acting in his capacity of notary public, and that said Grandstaff fraudulently certified said pretended acknowledgment, in order to wrong, cheat, and defraud these plaintiffs out of their interests in said lands,

and with the further fraudulent purpose and end of attempting to put the legal title to said land into his own daughter; that while the said James T. Alexander was lying dead, and before his burial, the said Grandstaff burned several of said decedent's important papers; that, if said original paper is preserved, they will be able to prove that the signature thereto is not the signature of said decedent, James T. Alexander;" and they pray that the clerk of the county court may be enjoined from delivering said original paper, a copy of which is filed as Exhibit A, to the said Adam Grandstaff, or E. E. Davis, or any other person, until the further order of the court. But plaintiffs do not pray costs against defendant Grandstaff. See *Le Texier* v. *Anspach*, 15 Ves. 164; Story, Eq. Pl. (10th Ed.) §§ 231, 232, and notes. "The practice of joining as defendants other persons than the real parties in interest for the purpose of discovery and costs, seems to be now limited both to cases of fraud and to persons who are strictly agents, including in that term solicitors and attorneys, who are arbitrators." See *Berstall* v. *Beyfus*, 26 Ch. Div. 35, and cases cited in note c; Story, Eq. Pl. (10th Ed.) §§ 232, 233; *Tavenner* v. *Barrett*, 21 W. Va. 656.

The bill and the deed exhibited therewith will show that James T. Alexander died on the 30th day of March, 1891, but the deed was not put on record until the 15th day of July, 1891; that between these dates Edward Alexander, a brother of decedent, and one of the plaintiffs, visited the widow, whereupon she and Adam Grandstaff said they desired to purchase said tract of land, and asked the said Edward to negotiate the price and terms of sale, and afterwards plaintiffs addressed a letter to the said parties, in which they agreed to sell their interests in said land to said Grandstaff and Elmira Alexander for the price and upon the terms set forth in said letter, and Grandstaff and the widow, Elmira, declined to accept the terms of said proposed sale, and plaintiffs, to their utter surprise, learned that on the 15th or 20th of July, 1891, the deed in controversy, dated February 18, 1891, had been left with the clerk for record. So that the substance of the charge is that Grandstaff wrote said deed, and signed decedent's name

thereto without authority, and as notary public falsely cer-
tified the acknowledgment of said deed by James T. Alex-
ander, the pretended grantor, in order to cheat and defraud
these plaintiffs out of their interests in said land which he
(Grandstaff) had proposed to buy, and to that end fraudu-
lently attempted to put the legal title in said land into his
own daughter.  Therefore this is a case, as made by the
bill, against defendant Grandstaff of making and certifying
the acknowledgment falsely and fraudulently, for his own
purpose, and for his own interest and advantage; therefore
I think he was a proper party, and the demurrer should
not have been sustained, and the bill dismissed as to him,
but the decision of the question should have been retained
for some future hearing, for it was by no means clear that
the ground of demurrer was so clear that the bill would be
dismissed, with costs, at the hearing.  See *Tavenner* v. *Bar-
rett*, 21 W. Va. 656.  When the cause had reached such a
stage in the proof as to show that he was an improper
party, and was made one in order to disqualify him as a
witness, then it would be time to dismiss him out of the
suit, and thus restore his competency as a witness.  Other-
wise we might some day have a notary public drawing up
a deed conveying the land of some dead man, who could
not testify, to some trusted friend of the scrivener, for the
scrivener's secret benefit, purporting to be signed and
sealed by the grantor, the notary then falsely certifying his
acknowledgment, then coming in as a witness against the
dead man's heirs, proving again these facts, and that it was
signed, sealed, and delivered to him as the agent of the ab-
sent grantee, to hold said land for the notary's benefit in
whole or in part.  Therefore I think Grandstaff, in his in-
dividual capacity (and he could not be made a defendant
in his capacity of notary public) was a proper defendant
on the face of the bill, and should not, at least at that stage
of the cause, have been dismissed as a defendant on de-
murrer.

Inasmuch as, owing to the condition of the pleadings,
no final decree on the merits can now be pronounced
against the validity of the deed in question, the decree com-
plained of is reversed, with directions to amend the plead-

ings, and have the issue on the plea of *non est factum*, as put in by plaintiffs, properly tried by a jury.

Reversed and remanded.