# CHARLESTON.

## EAKIN v. HAWKINS.

Submitted June 13, 1902.   Decided December 6, 1902.

1. SANITY—*Presumption of Law.*

   The sanity of the grantor in a deed, the validity of which is questioned, is presumed by law, and the burden is upon the attacking parties to overthrow the presumption.   (p. 126).

2. SANITY.

   In the absence of fraud, imposition or undue influence, such presumption will not be overcome by evidence of mere mental weakness or feeblesness of understanding, if the grantor has sufficient capacity to understand the nature of the act he does. (p. 126).

3. LIFE TENANT—*Royalty Interest.*

   The interest of a life tenant in the proceeds of royalty oil taken from the premises is the interest on the fund during his natural life.   (p. 128).

4. LIFE ESTATE—*Erroneous Decree.*

   Where petroleum oil is extracted from land, conveyed to a person for life and remainder in fee to his heirs, under a lease from the life tenant, and a sale of the interest in remainder by order of a court of chancery in a proper proceeding for the purpose, reserving in the lease and order of sale one-eighth of the oil for the owners of the land, it is error to decree, to the life tenant or his grantees, in another suit, the royalty oil or proceeds thereof to hold until the expiration of the life tenancy and take the income thereof, and then pay over the corpus of the fund to those entitled in remainder.   (p 130).

5. INSANE PERSON—*Guardian ad litem—Error.*

   It is reversible error to proceed in a suit against an insane person and enter a decree against him without the appointment of a guardian *ad litem* for him and the filing of an answer by such guardian.   (p. 128).

6. INSANE PERSON—*Guardian ad litem.*

   When a person has been adjudged to be insane, the presumption of insanity continues until he is discharged, and, in a suit against him, it is necessary to appoint a guardian *ad litem* for him.   (p. 129).

7. INFANT'S ANSWER—*Affidavit.*

   The mere formal aswer of a guardian *ad litem* to an infant

need not be sworn to, unless it be in a proceeding to lease or sell his real estate. (p. 131).

Appeal from Circuit Court, Tyler County.

Action by Justus Eakin against I. N. Hawkins and others. From a judgment for plaintiff, defendants appeal.

*Reversed.*

G. D. SMITH, for appellants.

HALL & HALL, for appellee.

POFFENBARGER, JUDGE:

For the sole purpose of testing the sufficiency of the bill, this cause was before this Court once before, and the decision of that question is reported in 48 W. Va. at page 364. In addition to holding the bill good, this Court indicated, or rather determined, the character of the estate to which the plaintiffs are entitled, as shown by the bill, and also indicated the measure of the relief to which they are entitled. The case, as it stands on the present appeal, is simplified, not only by these indications, but also by the full statement of the matters involved, found in the opinion delivered on the former appeal.

On the 26th day of August, 1901, after the cause had been remanded to the circuit court, and the answers had been filed and depositions taken and filed, a final decree was made, ordering the payment by the receiver to the plaintiffs of the moneys in his hands arising from the sale of the one-half of the royalty oil, and the delivery to the plaintiffs by the Fisher Oil Company, S. P. Boyer and J. H. Caldwell, of all the oil arising from said royalty not theretofore delivered by them to the receiver, and authorizing the plaintiffs to sell the same. It was further adjudged, ordered and decreed that the plaintiffs should hold and use said moneys arising from sales of oil for and during the natural life of the defendant Isaac N. Hawkins, but upon his death pay the same to the remaindermen entitled thereto. The one-half of the royalty conveyed by Isaac N. Hawkins to C. S. Fluharty was held by Justice Eakin, William McG. Hall, J. P. Chaplin, S. B. Hall and E. J. Thompson by conveyances directly and indirectly from Fluharty, in the following proportions: One-half, three-sixteenths, two-sixteenths, two-six-

teenths and one-sixteenth, and the decree directed the proceeds of the oil sold and the distribution of the unsold oil to them in those proportions. From this decree the defendants have appealed.

The first assignment of error goes to the whole controversy. It is that the court erred in holding that Isaac N. Hawkins was competent to make the deed by which he conveyed the interest claimed by the plaintiffs to C. S. Fluharty. On this question a number of witnesses were examined. None of them would say that he was insane. The substance of their testimony was, that he was a man of inferior intellect, not capable of transacting important business. He had raised a family, cultivated his farm, worked as a hired hand at ordinary farm labor and transacted ordinary business as a farm laborer and as the head of a family. There is testimony showing, however, that at times he had had the advice of B. F. Hawkins, his brother, who, in August, 1897, fourteen months after the execution of this deed, was appointed a committee for him. There is no evidence tending to show that the execution of this deed was the result of any undue influence practiced upon said Hawkins. It is only contended that the deed is invalid because of his incompetency to execute a deed by reason of unsoundness of mind.

The burden of proof rested upon those who sought to impeach the deed. All the authorities hold this to be the rule, and, further, that the sanity of the grantor in a deed, the validity of which is questioned, is presumed by law. *Jarrott* v. *Jarrott*, 11 W. Va. 584; *Kerr* v. *Lunsford*, 31 W. Va. 661; *Anderson* v. *Cranmer*, 11 W. Va. 562; *Hiatt* v. *Shull*, 36, W. Va. 563; *Snodgrass* v. *Knight*, 43 W. Va 294; *Buckey* v. *Buckey*, 38 W. Va. 168. In order to invalidate the deed on that ground, this presumption must be overthrown. What is sufficient to do that? "This presumption is universal, and is not defeated by common report or reputation, or the imputation of friends or relatives, or the old age or feebleness of the subject, or, in short, by any cause except controlling evidence produced." Busw. Insan., s. 159. "The principle is sound in itself, and settled as a rule, that, in the absence of fraud, imposition, or undue influence, mere weakness or feebleness of understanding is not sufficient to overthrow the party's deed. * * * * * His mind may be weak and debilitated as compared with what it once was, the

memory enfeebled, the understanding be weak, the character and demeanor eccentric, and he may not have capacity to transact all the ordinary business of life; still, if he understands the nature of the act he does, recollects the property he is disposing of, and the person to whom he grants it, and how he desires to dispose of it, his act is valid." *Buckey* v. *Buckey,* cited; *Nicholas* v. *Kershner,* 20 W. Va. 251; *Kerr* v. *Lunsford,* cited. It is admitted by practically all the witnesses in this case that, at the time the deed was made, Hawkins had sufficient intellect and mental power to know and understand what he was disposing of and that, in executing the deed, he was parting with his property. All that is claimed by them is that he was easily persuaded and that he had no fair conception or understanding of values, in consequence of which he was without capacity to do business, in the ordinary sense of the term, and yet it is not pretended that he was, in any sense, a victim of fraud or undue influence. Under the well established principles and rules above referred to, the evidence falls far short of establishing such mental weakness or unsoundness of mind as will invalidate a deed.

It is claimed that the court erred in finding that the consideration of thirty dollars for the sale of one-half of the royalty was paid. A sufficient answer to this is that the deed recites the amount of the consideration and the receipt thereof by the grantor. It is too well known to require citation of authority that this is *prima facie* evidence of the amount of the consideration and of the payment thereof. It being only *prima facie* proof, it could have been overcome by evidence to the contrary, but the record discloses no such evidence. Another argument against this finding is, that the inadequacy of the consideration is so great as to shock the conscience of the court. On this question, the testimony of witnesses was taken, from which it appears that the value of the royalty was wholly speculative, and that, at the time of the conveyance in question, there were no developments which indicated to any reasonable certainty that the territory was valuable for oil and gas purposes. Some. wells had been drilled near the property, but they were not such as to indicate that Hawkins' land was oil producing territory.

The court below clearly erred, however, in decreeing to the plaintiffs' payment of the money, arising from the sale by the

receiver, of the one-half of the royalty oil, and delivery of the unsold half of the royalty oil. Isaac N. Hawkins having been seized of a life estate only in the land, his interest in the proceeds of the royalty oil acquired from said land is limited to the interest thereon for and during his natural life. He has no right either to use or dispose of the *corpus* of the fund or property. *Williamson* v. *Jones,* 43 W. Va. 562; *Wilson* v. *Youst,* 43 W. Va. 826; *Ammons* v. *Ammons,* 50 W. Va. 390. Need it be said that he could convey nothing more than belonged to him? By the deed from Isaac N. Hawkins, therefore, the plaintiffs acquired only the right to take the interest on the proceeds of one-half of the royalty oil for and during the natural life of Isaac N. Hawkins. It was the duty of the court, in decreeing a sale of the interest in remainder in the oil and gas to provide, by proper orders, for the preservation of that fund for the benefit of those who shall be ultimately entitled to it. *Ammons* v. *Ammons,* cited. In the proceeding in which the sale of the oil and gas was authorized by the court, that seems to have been done, and, if so, the fund cannot rightfully be diverted from the hands of its legal custodian by a decree in this cause. Whether it was done or not, is immaterial in this suit. If it was not done, the court has no right or power to give the plaintiffs that which clearly does not belong to them. Nor has it the power to place this fund in the hands of persons who are not authorized by law to have the custody of it, and thereby put it in jeopardy. While the decree provides that the plaintiffs, upon the death of Isaac N. Hawkins, shall pay the *corpus* of the fund decreed to them to the heirs of said Hawkins, the plaintiffs are not made guardians nor receivers, nor put in fiduciary relation to the remaindermen, nor in any official relation to the court whereby they would be subject in the future to the orders of the court, respecting these funds, nor is any security required of them. How long Isaac N. Hawkins may live is uncertain and whether these plaintiffs, at the time of his death, will be able to pay over to those entitled to them the funds placed in their hands by this decree, is also uncertain. If the court, in selling the oil and gas in the land, did not provide for the preservation of the fund arising from the sale thereof and from the royalty thereafter to accrue therefrom, it may be required to do so yet, as it appears that the funds are still in the control of the court,

through its receiver and the guardian appointed at the time the sale was made. *Ammons* v. *Ammons,* cited. To permit this decree to stand and the funds to pass out of the control of the court by virtue of it, would conflict with the right to have the fund preserved, or would, at least, involve it in complications.

Another assignment of error, fatal to the decree, is, that no guardian *ad litem* was appointed for Isaac N. Hawkins, who is the defendants and who, in 1897, more than a year after he made the deed, the validity of which is brought in question in this suit, was adjudged insane. Counsel for the appellees say in their brief it would have been a contradiction for them to have had a guardian *ad litem* appointed for Hawkins because they claimed in their pleadings, and have attempted to prove, that he is sane and was sane at the time he executed the deed. The presumption of law in favor of sanity which upholds the deed relied upon by the appellees relates to the time at which the deed was made. That makes their deed valid and supports their title to one-half of what interest Isaac N. Hawkins had in the royalty arising from the operations for oil on said land. About fourteen months after the deed was executed, Isaac N. Hawkins was adjudged to be insane. Whether that adjudication is right or wrong is a matter with which we have nothing to do here. If wrong, it cannot be overthrown in a collateral suit. *Jance* v. *McCoy,* 34 W. Va. 416. The remedy for reviewing such an adjudication is indicated in that case at page 419. It is not there decided what that remedy is, nor is it necessary to do so here, further than to say that the adjudication cannot be overthrown in a collateral proceeding. At the time this suit was brought and this decree entered, the insanity of Isaac N. Hawkins was *prima facie* established by that adjudication. Even the return of an inquisition, finding insanity, without a judgment upon it, has that effect. *Miskep's App.,* 107 Pa. St. 611; *Hicks* v. *Marshall,* 8 Hun. (N. Y.) 327. "Where, however, a person has been proven to be insane, the presumption is that insanity continues, and the burden of proof shifts to the party alleging sanity." 11 Am. & Eng. Enc. Law, 160. The plaintiffs in the court below were therefore bound to treat Isaac N. Hawkins as an insane person at the time of the filing of their bill, and no decree could be taken against him in this suit without the appointment of a guardian *ad litem,* and a proper

answer filed by him. In that respect, an insane person stands upon the same footing as an infant and when made a defendant in a suit a guardian *ad litem* must be appointed. Code, chapter 125, section 13. As it is error to decree against an infant without a guardian *ad litem* having been appointed and his anwer filed, it is error to do so against an insane person. As to infants, see *Hull* v. *Hull,* 26 W. Va. 1; *Alexander* v. *Davis,* 42 W. Va. 465; *McDonald* v. *McDonald,* 36 W. Va. 676; *Bank* v. *Ritchie,* 8 Pet. 138. As to insane persons, see *McAlister* v. *Bank,* 15 Neb. 395; Code, chapter 125, section 13; chapter 71, section 22; chapter 83, sections 3 and 13.

The failure of the guardian *ad litem* for the infant defendants to answer under oath is also assigned as error. The answer was filed but it is not verified. In proceedings to sell the real estate of infants and insane persons, the statute requires both the guardian *ad litem* and the infant, if the latter be over fourteen years of age, to answer under oath. Code, chapter 71, section 22; chapter 83, section 3. Originally, all answers were required to be under oath, unless dispensed with by the plaintiff, or the defendant was entitled to the privilege of peerage, or was a corporation aggregate. Story's Eq. Pl., section 874; 4 Min. Ins., 118; Bart. Ch. Pr. 389. But it is now held by the following authorities that a merely formal answer made by a guardian *ad litem* for an infant need not be under oath: 4 Min. Ins. 1191; Bart. Ch. Pr. 389; 10 Enc. Pl. & Pr. 690; *Johnson* v. *McCabe,* 42 Miss. 255; *Ridgley* v. *Bennett,* 13 Lea. (Tenn.) 210; *Revely* v. *Skinner,* 33 Mo. 100. The cases cited in support of the proposition put the decision upon the ground that such an answer sets forth no facts to be supported by them, and only submits the rights of the infants to the protection of the court in a formal way. In the last case it is said that the guardian *ad litem* is frequently taken from the bystanders, and is not supposed to have any knowledge of the matter in litigation, and hence no verification is required to his answer. To this it may well be replied that the answer is necessary to the establishment of the fact of infancy, which dispenses with service of process upon the infant. If return of service of process upon an adult is not made by an officer, it must be under oath. As the answer of the guardian *ad litem* dispenses with such service, why should it not be under the same solemn sanction as a return? This

seems to be hardly sufficient ground upon which to dispense with the solemn formalities which were undoubtedly required in the old English practice. It is said by HOLT, Judge, in *Alexander* v. *Davis*, 42 W. Va. 465, that the appointment of a guardian *ad litem* is somewhat like the issuance of process, and the guardian's acceptance of the appointment by filing his answer is like the service of process, both of which are necessary to give the court jurisdiction, it being unnecessary to serve ordinary process commencing a suit upon an infant. While the whole proceeding of the appointment of guardian, the filing of his answer, and the answer itself is on its face the most barren formality, it is so essential and important that no decree or judgment can be rendered against an infant without it, any more than against an adult without process. At common law, as has been shown, such answers were required to be under oath. Whatever reason may have existed then for requiring them to be under oath must exist still, for the office of a guardian *ad litem* and his duties were the same as they now are. However, section 38 of chapter 125 of the Code dispenses with the verification of an answer when the bill is not verified. The answer of a guardian *ad litem* is not excepted from the operation of this statute. It applies to all answers. The only exception is that of the answer in proceedings to sell the real estate of an infant or an insane person. There the statute expressly requires the answer to be sworn to. In note 4, on page 389 of Bart. Ch. Pr., it is given as the opinion of the author of that work that this statute has the effect of dispensing with the verification of an answer of a guardian *ad litem*. His view seems to be correct. However important the oath may be, the legislature may dispense with it.

For the foregoing reasons, the decree must be reversed and the cause remanded, for the appointment of a guardian *ad litem* for the insane defendant, and then to be proceeded with in accordance with the views herein expressed, and further, according to the rules and principles governing courts of equity.

*Reversed.*